Calendar No. 1605

89TH CONGRESS } SENATE { REPORT
2d Session } { No. 1643

# CONGRESSIONAL REFERENCE CASES, U.S. COURT OF CLAIMS

SEPTEMBER 22, 1966.—Ordered to be printed

Mr. TYDINGS, from the Committee on the Judiciary, submitted the following

## REPORT

[To accompany H.R. 1665]

The Committee on the Judiciary, to which was referred the bill (H.R. 1665) to amend title 28, entitled "Judiciary and Judicial Procedure," of the United States Code to confer jurisdiction upon the Court of Claims to hear, determine, and render judgment in special jurisdictional cases, and for other purposes, having considered the same, reports favorably thereon with amendments and recommends that the bill as amended do pass.

### AMENDMENT

Strike out all after the enacting clause and insert in lieu thereof the following:

That section 1492 of title 28, United States Code, is amended to read as follows:

**"§ 1492. Congressional reference cases.**

"Any bill, except a bill for a pension, may be referred by either House of Congress to the chief commissioner of the Court of Claims for a report in conformity with section 2509 of this title."

SEC. 2. Section 2509 of title 28, United States Code, is amended to read as follows:

**"§ 2509. Congressional reference cases.**

"(a) Whenever a bill, except a bill for a pension, is referred by either House of Congress to the chief commissioner of the Court of Claims pursuant to section 1492 of this title, the chief commissioner shall designate a trial commissioner for the case and a panel of three commissioners of the court to serve as a reviewing body. One member of the review panel shall be designated as presiding commissioner of the panel.

65-010

"(b) Proceedings in a Congressional reference case shall be under rules and regulations prescribed for the purpose by the chief commissioner who is hereby authorized and directed to require the application of the pertinent rules of practice of the Court of Claims insofar as feasible. Each trial commissioner and each review panel shall have authority to do and perform any acts which may be necessary or proper for the efficient performance of their duties, including the power of subpoena and the power to administer oaths and affirmations. None of the rules, rulings, findings, or conclusions authorized by this section shall be subject to judicial review.

"(c) The trial commissioner to whom a Congressional reference case is assigned by the chief commissioner shall proceed in accordance with the applicable rules to determine the facts, including facts relating to delay or laches, facts bearing upon the question whether the bar of any statute of limitation should be removed, or facts claimed to excuse the claimant for not having resorted to any established legal remedy. He shall append to his findings of fact conclusions sufficient to inform Congress whether the demand is a legal or equitable claim or a gratuity, and the amount, if any, legally or equitably due from the United States to the claimant.

"(d) The findings and conclusions of the trial commissioner shall be submitted by him, together with the record in the case, to the review panel of commissioners for review by it pursuant to such rules as may be provided for the purpose, which shall include provision for submitting the report of the trial commissioner to the parties for consideration, exception, and argument before the panel. The panel, by majority vote, shall adopt or modify the findings or the conclusions of the trial commissioner.

"(e) The panel shall submit its report to the chief commissioner for transmission to the appropriate House of Congress.

"(f) Any act or failure to act or other conduct by a party, a witness, or an attorney which would call for the imposition of sanctions under the rules of practice of the Court of Claims shall be noted by the panel or the trial commissioner at the time of the occurrence thereof and upon failure of the delinquent or offending party, witness, or attorney to make prompt compliance with the order of the panel or the trial commissioner a full statement of the circumstances shall be incorporated in the report of the panel.

"(g) The Court of Claims is hereby authorized and directed, under such regulations as it may prescribe, to provide the facilities and services of the office of the clerk of the court for the filing, processing, hearing, and dispatch of Congressional reference cases and to include within its annual appropriations the costs thereof and other costs of administration, including (but without limitation to the items herein listed) the salaries and traveling expenses of the commissioners serving as trial commissioners and panel members, mailing and service of process, necessary physical facilities, equipment, and supplies, and personnel (including secretaries and law clerks)."

SEC. 3. Section 792(a) of title 28, United States Code, is amended by adding at the end thereof the following new sentence:

"The Court shall designate one of the commissioners to serve at the will of the court as chief commissioner."

Amend the title so as to read:

A bill to amend title 28, entitled "Judiciary and Judicial Procedure", of the United States Code to provide for the reporting of Congressional reference cases by commissioners of the United States Court of Claims.

## PURPOSE OF AMENDMENT

The amendment is in the nature of a substitute bill. The substitute bill differs from the original bill, as introduced and passed by the House, in that it provides for the reference of congressional reference cases to commissioners of the U.S. Court of Claims for advisory reports to the Congress. The original bill provided for the Court of Claims itself to render binding judgment in such cases upon reference by one House of Congress.



## PURPOSE OF BILL

The purpose of the bill is to provide a procedure whereby comple issues of fact raised by claims for private relief bills may be referred commissioners of the Court of Claims for an advisory report to th Congress.

## STATEMENT

Each year a number of claims for private relief legislation come the Congress that raise complex issues of fact which must be resolv before the Congress can determine whether the relief requested oug to be granted. The relevant committees of the Congress have usual found that they lack the time, facilities and expertise necessary hear the evidence and make the determinations of these issu Congress has therefore traditionally sought to make use of other mea to hear these issues, while retaining for itself the prerogative of gra ing or denying the relief sought.

Until recently, the procedure followed in such cases was for o House of Congress to refer any such private relief bill to the Court Claims for a report on the facts and advisory conclusions as to wheth the relief requested should be granted. 28 U.S.C., sections 1492, 25 On the basis of the Court of Claims' report on each of the "Congr sional reference cases," Congress would then decide whether or not enact the private relief bill.

In 1962, however, in the case of *Glidden Co.* v. *Zdanok*, 370 U 530, the Supreme Court held that the Court of Claims was a court the United States within the meaning of article III of the Consti tion. It is well settled that an article III court may only dec cases and controversies, and may not render merely advisory opini that other branches of the Government are free to disregard. cordingly, the effect of the decision in *Glidden* that the Court of Cla is an article III court was to preclude the continued exercise by t court of the advisory jurisdiction on congressional reference case provided by 28 U.S.C. sections 1492 and 2509. Since the *Glid* decision the Court of Claims has regretfully declined to accept further congressional reference cases.

H.R. 1665 was introduced in order to provide an alternative me of handling congressional reference cases. The bill as passed by House of Representatives provides that the Court of Claims, u reference by resolution of one House of Congress, would have ju diction, notwithstanding any statute of limitations, to render j ment for the amount, if any, determined to be legally or equit due from the United States. The Department of Justice ra several substantial objections to this approach to the problem, before the House Committee on the Judiciary and before the committee on Improvements in Judicial Machinery at a hearing on June 10, 1955.

The Department put forth two major constitutional argum against H.R. 1665 in its original form: (1) It would allow only House of Congress, without Presidential approval, to perform actions traditionally requiring normal legislative procedures— ferring jurisdiction upon a court of the United States, and waiving statute of limitations for a particular case, and (2) it would call a court of the United States to perform essentially legislative func by permitting the Court of Claims to decide whether as a matt

policy and equity the United States ought to pay money to a claimant when there might not be any sum legally due.

The committee believes that there is merit in those contentions of the Department of Justice, particularly with respect to the latter of the two objections. It is difficult to justify granting to a court the power to confer what has traditionally been regarded as legislative grace. It is for Congress to decide, after being fully informed of the facts, whether the equities of a particular situation are such that rules of law of general application ought to be suspended for that one case. For these reasons, the staff of the Subcommittee on Improvements in Judicial Machinery has endeavored for the past several months to devise a substitute measure, satisfactory to both the Department of Justice and the Court of Claims, which would retain the advisory feature of present law. The amended bill would achieve this purpose and has the acceptance of the Department of Justice and the Court of Claims.

The amended bill provides for reference of claims for private relief bills by resolution of one House of Congress to the chief commissioner of the Court of Claims, who would appoint both a trial commissioner to hear the evidence and prepare suggested findings, and a panel of three commissioners of the court to sit as a reviewing body and report its findings and recommendations to the appropriate House of Congress. The report of this panel of Commissioners to the Congress is wholly advisory, and the power to grant legislative grace by passing the relief bill remains solely in the hands of the Congress. The committee is of the opinion that this approach is preferable both on constitutional grounds and for reasons of policy.

In the letter of the Deputy Attorney General to Senator Joseph D. Tydings, chairman of the Subcommittee on Improvements in Judicial Machinery, dated August 22, 1966, the Department of Justice questions the need for this legislation. The Deputy Attorney General also recommends that private relief legislation be used sparingly, and that general legislation is always preferable. Your committee feels that it is in order to make some comment about these observations.

The contention that general legislation is preferable and should be sufficient to cover all cases attributes to the legislative branch a degree of omniscience and prescience that this committee is unwilling to claim for itself. It is impossible, particularly in legislation regulating the relationship between the Government and private parties, to take account of all eventualities.

It should also be remembered that in the special area with which private relief legislation deals, factors that in other areas ameliorate the possible harsh effects of general laws may not exist. Government officials are understandably unwilling to spend the taxpayers' money in situations in which they are not clearly authorized by statute to do so, whereas in a comparable situation a private party might well decide that, although under the law his obligation is not clear, he will pay another person what he feels that equity and fair play dictate he pay. Conversely, a Government official—despite his personal view of the equities of a particular situation—will be extremely reluctant to fail to press the Government's rights under a general statute, while a private party might decide that in good conscience he should forgo what is legally his due.

In addition, in applying statutes regulating the rights and obligations of the Government the courts have less freedom to adjust their decisions to the equities of particular situations than they do in developing the common law of relationships among private parties. For all these reasons, the committee is of the opinion that private relief legislation is both useful and necessary, and that this legislation is needed in order to facilitate congressional action on such private legislation.



The committee does agree with the Deputy Attorney General, however, that general legislation, where feasible, is preferable to private relief legislation, and that the Congress should exercise restraint in the utilization of this legislation, referring claims for private relief to the chief commissioner of the Court of Claims only when complex issues of fact must be resolved as a prerequisite for relief.

Accordingly, the committee recommends that the bill H.R. 1665, as amended, be considered favorably.

Attached hereto and made a part hereof are letters from the Department of Justice and the Court of Claims.

OFFICE OF THE DEPUTY ATTORNEY GENERAL,
*Washington, D.C., August 22, 1966.*

Hon. JOSEPH D. TYDINGS,
*Chairman, Subcommittee on Improvements in Judicial Machinery, Committee on the Judiciary, U.S. Senate, Washington, D.C.*

DEAR SENATOR TYDINGS: This is in response to your request for the views of the Department of Justice on a draft of a substitute bill for H.R. 1665, to amend the Judicial Code (title 28, United States Code) to provide for the reporting of congressional reference cases by commissioners of the U.S. Court of Claims, and for other purposes.

At the outset, it may be convenient to summarize the problems and to recount the sequence of events which have given rise to this bill.

Title 28, United States Code sections 1492 and 2509 presently provide that one House of Congress may refer any private relief bill, except a bill for a pension, to the Court of Claims, which shall then find and report to that House the facts of the case, along with conclusions sufficient to inform Congress "whether the demand is a legal or equitable claim or a gratuity, and the amount, if any, legally or equitably due from the United States to the claimant." These provisions assume that on the basis of such a report, Congress will determine whether or not to enact a private bill for the relief of the claimant.

In 1962, however, in *Glidden Co.* v. *Zdanok*, 370 U.S. 530, the Supreme Court held that the Court of Claims was a court established under article III of the Constitution. In so holding, the Court accepted the declaration Congress had made in 1953 that the Court of Claims was "a court established under article III of the Constitution of the United States" (act of July 28, 1953, sec. 1, 67 Stat. 226, added to 28 U.S.C. 171). Both the prevailing and the dissenting opinions in the *Glidden* case assumed that the effect of holding the Court of Claims to be an article III court would be to preclude it from accepting congressional reference cases under 28 U.S.C. 1492 and 2509, because of the well-settled rule that an article III court may not render advisory opinions which another branch of the Government has the power to modify or disregard. The Court of Claims has in fact declined to hear and render advisory reports on claims referred to it by Congress since the opinions in *Glidden* were handed down.

Case 1:02-cg-00173-PMA Document 49-4 Filed 09/27/2004 Page 4 of 6



H.R. 1665 was thereafter introduced in response to the continuing need for a forum in which to try the complicated issues of law and fact that are present in some private claims against the United States. That bill would have enabled one House of Congress to refer a claim to the Court of Claims, and would have directed the court itself to enter judgment for the amount, if any, which it found to be "legally or equitably due" from the United States to the claimant. The court would not have been required to report the case back to Congress.

However, the Department of Justice objected [1] to H.R. 1665 on two major constitutional grounds: (1) that it would have delegated legislative powers to a single House of Congress by permitting it to dispense with normally applicable rules of law (e.g., the statute of limitations) in referring cases for final judgment to the Court of Claims; (2) that it would have delegated essentially legislative powers to the Court of Claims by permitting that court to decide claims on an equitable (as synonymous with moral) basis, rather than on a legal basis.

Neither of those objectionable features appears in the substitute bill for H.R. 1665. The salient feature of the substitute bill is that it would provide for the reference of a claim by either House of Congress to the Chief Commissioner of the Court of Claims, who would designate "a trial commissioner for the case and a panel of three commissioners of the court to serve as a reviewing body." The trial commissioner would proceed in accordance with appropriate rules, including the rules of practice of the Court of Claims insofar as feasible, to determine the facts of the case. Specifically, these would include, in language identical to 28 U.S.C. 2509, "facts relating to delay or laches, facts bearing upon the question whether the bar of any statute of limitation should be removed, or facts claimed to excuse the claimant for not having resorted to any established legal remedy." The trial commissioner, would, in addition, append to his findings of fact "conclusions sufficient to inform Congress whether the demand is a legal or equitable claim or a gratuity, and the amount, if any, legally or equitably due from the United States to the claimant." This language is also taken verbatim from 28 U.S.C. 2509. After considering the trial commissioner's report and arguments of the parties, the review panel of commissioners, by majority vote, would adopt or modify his findings and conclusions and submit its own report to the Chief Commissioner for transmission to the appropriate House of Congress. Thus the advisory function in congressional reference cases would be preserved without substantive alteration, but would be performed by non-article-III officials, and the legislative power to act in cases of that nature would remain with the Congress.

The Department of Justice has no constitutional objections to the substitute bill. However, the bill does raise several problems of lesser magnitude which we would like to call respectfully to the attention of your committee. These problems, with our suggestions for dealing with them by appropriate amendments to the bill, are as follows:

A. Although rule 56(a) of the Rules of the Court of Claims authorizes Commissioners to put witnesses under oath, there is no assurance that this rule would be among the "pertinent rules of practice" of the Court of Claims which proposed section 2509(b) of the bill

[1] See the statement on June 10, 1965, of Mr. Barnett, representing the Department of Justice, before the Subcommittee on Improvements in Judicial Machinery.



requires to be applied "insofar as feasible," nor that the administering of oaths would be among the acts, also authorized by that subsection, which may be "necessary or proper" for the efficient performance of the Commissioners' duties. By contrast, proposed section 2509(b) does explicitly confer upon Commissioners the power of subpena. We recommend that the Commissioners also be authorized explicitly by statute to administer oaths in congressional reference proceedings. Such an authorization would leave no doubt of the applicability of 18 U.S.C. 1621 (sanctions for perjury) to congressional reference proceedings, and would therefore help to insure truthful testimony in such proceedings. The bill could accomplish this purpose by a simple amendment to 28 U.S.C. 2503(a), which currently authorizes the Commissioners to administer oaths in "any suit in the Court of Claims."

B. Although proposed section 2509(b) states that the Commissioners shall have "the power of subpena," it provides for no sanction against a witness who refuses to obey such a subpena. Nor does it provide for sanctions against a witness who refuses to answer questions or otherwise to obey a proper order of a Commissioner. According to proposed section 2509(f), "[a]ny act or failure to act or other conduct by a party, a witness, or an attorney which would call for the imposition of sanctions under the rules of practice of the Court of Claims" shall merely be noted in the report of the panel to Congress. It is our recommendation that the Commissioners be given the authority, in congressional reference cases, to refer a refusal to obey a subpena to any District Court of the district in which the witness resides or may be found, for an order directing the witness to obey the subpena on pain of punishment for contempt. If the Commissioners were to have that authority, the "power of subpena" would be an effective power and the Government would be better enabled to defend such cases properly. In the interest of more efficient procedure, we also recommend that the Commissioners be given similar authority to seek a court order directing a recalcitrant witness to answer questions or otherwise to obey a proper order of a Commissioner in a congressional reference case. These purposes could be accomplished by further amendments to section 2509 (b) and (f) as they appear in the substitute bill.

C. Section 3 of the bill would delete the present provision of 2[8] U.S.C. 792(a) that the 15 commissioners "shall be subject to remov[al] by the court." We do not know whether this is a deliberate or an in[-]advertent deletion, or whether the Court of Claims has been consulte[d] about it, but we do believe that its effect may well be to create doub[t] as to what changes, if any, Congress intended to make in the cond[i-]tions of tenure affecting commissioners and in the removal powers [of] the court. We recommend reinstatement of the deleted provisio[n.] If it is not to be reinstated, then some clear indication of the intent [of] Congress in deleting it should be supplied.

The Department of Justice questions the need for this legislatio[n.] However, if it is the determination of the Congress that such legis[la-]tion is necessary, we strongly believe that the substitute bill which w[as] submitted to the Department by committee letter dated June 22, 196[5] should be selected because of the constitutional problems inherent [in] the bill as it passed the House.

We would recommend that if this legislation is enacted, it be us[ed] sparingly. Private relief legislation is preferential and, in fact, d

Case 1:02-cv-00173-PMA Document 49-4 Filed 09/27/2004 Page 5 of 6



criminatory as to others similarly situated. Hence, where relief appears warranted with respect to classes of claims, general legislation is preferable.

The Bureau of the Budget has advised that there is no objection to the submission of this report from the standpoint of the administration's program.

Sincerely,

RAMSEY CLARK,
*Deputy Attorney General.*

---

CHAMBERS,
U.S. COURT OF CLAIMS,
*Washington, D.C., July 5, 1966.*

Re H.R. 1665.

Hon. JOSEPH D. TYDINGS,
*Chairman, Subcommittee on Improvements, in Judicial Machinery, Committee on the Judiciary, U.S. Senate, Washington, D.C.*

DEAR SENATOR TYDINGS: Mr. William T. Finley, Jr., chief counsel of the subcommittee, has submitted to the court a draft prepared as a substitute for H.R. 1665. He requested that the court submit its comments.

After carefully considering the substitute, it is our opinion that H.R. 1665, as passed by the House, is a much better solution of the congressional reference problem than the substitute. For a number of reasons which I shall not state in detail, the court prefers the House bill. We have also been told that H.R. 1665 is, in the view of some Congressmen, more desirable in that the final judgments which would be rendered pursuant thereto would relieve congressional committees and individual Congressmen of the extra work and pressure that often follows the receipt of an advisory report.

However, we have been informed that H.R. 1665 is not acceptable to the members of the Senate Subcommittee on Improvements in Judicial Machinery, and we respect their views. Therefore, if the Congress passes the substitute, the court stands ready to cooperate in providing the services that are called for therein to the full extent that we may do so in conformity with the decision of the Supreme Court in *Glidden* v. *Zdanok*, 370 U.S. 530. The majority of our commissioners are experienced in the trial of congressional reference cases and we believe that they can satisfactorily discharge the duties that would be required of them under the substitute bill.

If H.R. 1665, as passed by the House, should be enacted, it is our opinion that it would not be necessary for the court to appoint additional commissioners or other personnel for the disposition of the reference cases, unless there should be a substantial increase in our caseload. This will not be true if the substitute is approved by Congress.

Under the provisions of H.R. 1665, each commissioner who would be assigned a congressional reference case would complete the trial thereof and make his report to the court for its decision, without the assistance or participation of any other commissioner. On the other hand, the substitute will require the services of three additional commissioners on each case to perform the specified review functions. Both the assigned commissioner and the reviewing panel will be required to do legal research and write opinions. We understand



that there is an accumulation of private bills that will be referred to the court when the legislation is enacted. If these cases are to be reported with reasonable dispatch under the procedure detailed in the substitute, we feel certain that the employment of four additional law clerks will be needed to assist the commissioners soon after the substitute is approved.

Aside from the additional law clerks mentioned above, it is too early to predict the extent to which the new duties to be performed by the commissioners under the substitute proposal will delay the disposition of the regular cases filed with the court, or whether the appointment of additional commissioners and other personnel will be needed. Therefore, we believe that the substitute should be amended so as to provide a clear authorization for such additional appropriations as actual experience shows to be necessary for the handling of the congressional reference cases. To that end, we respectfully request that the word "absorb" appearing in the fourth line of sec. 2(g) of the substitute, be stricken and that the word "include" be inserted in lieu thereof.

Sincerely yours,

WILSON COWAN,
*Chief Judge.*

CHANGES IN EXISTING LAW

In compliance with subsection (4) of rule XXIX of the Standing Rules of the Senate, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

## TITLE 28, UNITED STATES CODE

**§1492. Congressional reference cases.**

[The Court of Claims shall have jurisdiction to report to either House of Congress on any bill referred to the court by such House, except a bill for a pension, and to render judgment if the claim against the United States represented by the referred bill is one over which the court has jurisdiction under other Acts of Congress.]

*Any bill, except a bill for a pension, may be referred by either House of Congress to the chief commissioner of the Court of Claims for a report in conformity with section 2509 of this title.*

**§2509. Congressional reference cases.**

[Whenever any bill, except for a pension, is referred to the Court of Claims by either House of Congress, such court shall proceed with the same in accordance with its rules and report to such House, the facts in the case, including facts relating to delay or laches, facts bearing upon the question whether the bar of any statute of limitation should be removed, or facts claimed to excuse the claimant for not having resorted to any established legal remedy.

The court shall also report conclusions sufficient to inform Congress whether the demand is a legal or equitable claim or a gratuity, and the amount, if any, legally or equitably due from the United States to the claimant.]

*(a) Whenever a bill, except a bill for a pension, is referred by either House of Congress to the chief commissioner of the Court of Claims pursuant to section 1492 of this title, the chief commissioner shall designate*

Case 1:02-cg-00173-FMA Document 49-4 Filed 09/27/2004 Page 6 of 6

*a trial commissioner for the case and a panel of three commissioners of the court to serve as a reviewing body. One member of the review panel shall be designated as presiding commissioner of the panel.*

*(b) Proceedings in a Congressional reference case shall be under rules and regulations prescribed for the purpose by the chief commissioner who is hereby authorized and directed to require the application of the pertinent rules of practice of the Court of Claims insofar as feasible. Each trial commissioner and each review panel shall have authority to do and perform any acts which may be necessary or proper for the efficient performance of their duties, including the power of subpoena and the power to administer oaths and affirmations. None of the rules, rulings, findings, or conclusions authorized by this section shall be subject to judicial review.*

*(c) The trial commissioner to whom a Congressional reference case is assigned by the chief commissioner shall proceed in accordance with the applicable rules to determine the facts, including facts relating to delay or laches, facts bearing upon the question whether the bar of any statute of limitation should be removed, or facts claimed to excuse the claimant for not having resorted to any established legal remedy. He shall append to his findings of fact conclusions sufficient to inform Congress whether the demand is a legal or equitable claim or a gratuity, and the amount, if any, legally or equitably due from the United States to the claimant.*

*(d) The findings and conclusions of the trial commissioner shall be submitted by him, together with the record in the case, to the review panel of commissioners for review by it pursuant to such rules as may be provided for the purpose, which shall include provision for submitting the report of the trial commissioner to the parties for consideration, exception, and argument before the panel. The panel, by majority vote, shall adopt or modify the findings or the conclusions of the trial commissioner.*

*(e) The panel shall submit its report to the chief commissioner for transmission to the appropriate House of Congress.*

*(f) Any act or failure to act or other conduct by a party, a witness, or an attorney which would call for the imposition of sanctions under the rules of practice of the Court of Claims shall be noted by the panel or the trial commissioner at the time of the occurrence thereof and upon failure of the delinquent or offending party, witness, or attorney to make prompt compliance with the order of the panel or the trial commissioner a full statement of the circumstances shall be incorporated in the report of the panel.*

*(g) The Court of Claims is hereby authorized and directed, under such regulations as it may prescribe, to provide the facilities and services of the office of the clerk of the court for the filing, processing, hearing, and dispatch of Congressional reference cases and to include within its annual appropriations the costs thereof and other costs of administration, including (but without limitation to the items herein listed) the salaries and traveling expenses of the commissioners serving as trial commissioners and panel members, mailing and service of process, necessary physical facilities, equipment, and supplies and personnel (including secretaries and law clerks).*

**§ 792. Commissioners.**

(a) The Court of Claims may appoint fifteen commissioners who shall be subject to removal by the court and shall devote all of their time to the duties of the office. *The Court shall designate one of the commissioners to serve at the will of the court as chief commissioner.*

○