CONGRESSIONAL REFERENCE

To The

UNITED STATES COURT OF FEDERAL CLAIMS

---

Congressional Reference No. 02-173X

(Review Panel)

---

J.L. SIMMONS COMPANY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REVIEW PANEL BRIEF

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Branch
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530

December 8, 2004

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S REVIEW PANEL BRIEF . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS AND SUMMARY OF PREVIOUS PROCEEDINGS . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1. Standard Of Review . . . . . . . . . . . . . . . . . . . . 5

2. The Hearing Officer Correctly Recognized That An Equitable Claim In A Congressional Reference Requires A Showing Of Wrongful Government Conduct . . 6

3. The Hearing Officer Correctly Applied The California Canners Standard And Found That Simmons Does Not Have An Equitable Claim . . . . . . . . 8

4. The Alleged Factual Errors In The Hearing Officer's Report Are Trivial And Irrelevant . . . . 13

5. The Hearing Officer's Decision With Regard To Simmons's Attorney Fee And Expense Claims Is Correct . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE(S)**

Estate of Braude v. United States,
38 Fed. Cl. 476 (1997) . . . . . . . . . . . . . . . . . . . 12

Burkhardt v. United States,
84 F. Supp. 553 (1949) . . . . . . . . . . . . . . . . . . passim

California Canners & Growers Ass'n v. United States,
9 Cl. Ct. 774(1986) . . . . . . . . . . . . . . . . . . . passim

Gay St. Corp. v. United States,
130 Ct.Cl. 341, 127 F. Supp. 585 (1955) . . . . . . . . . 13

J.D. Hedin Construction Co. v. United States,
408 F.2d 424 (Ct. Cl. 1969) . . . . . . . . . . . . . . . . 10

J.L. Simmons Co., Inc., v. United States,
412 F.2d 1360 (Ct. Cl. 1969) . . . . . . . . . . . . . . . 1,2

Land v. United States,
29 Fed. Cl. 744 (1993) . . . . . . . . . . . . . . . . . . 6,7,8

Lewis v. General Services Administration,
54 M.S.P.R. 120 (1992) . . . . . . . . . . . . . . . . . . . 13

Mackie v. United States,
172 Ct. Cl. 393, 398 (1965) . . . . . . . . . . . . . . . . 12

Merchants National Bank of Mobile v. United States,
7 Cl. Ct. 1, 8-9 (1984) . . . . . . . . . . . . . . . . . . . 5

Purvis v. United States,
216 Ct. Cl. 398 (1978) . . . . . . . . . . . . . . . . . . 11,12

Spalding & Son, Inc. v. United States,
24 Cl.Ct. 112 (1991) . . . . . . . . . . . . . . . . . . 7,8,13

**DOCKETED CASES**

Wong v. United States,
Cong. Ref. No. 3-74 (Ct. cl. Nov. 23, 1977) . . . . . . . . 6

Benoit v. United States,
2001 WL 567737, 5 (Fed. Cl. 2001)(Congressional
Reference) . . . . . . . . . . . . . . . . . . . . . . . . 12

**FEDERAL STATUTES**

32 C.F.R. § 536.24b(a) . . . . . . . . . . . . . . . . . . . . . 12

5 U.S.C. § 5596(b)(2) . . . . . . . . . . . . . . . . . . . . . 13

10 U.S.C. § 2733 . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. § 2674 . . . . . . . . . . . . . . . . . . . . . . . 13

CONGRESSIONAL REFERENCE

To The

UNITED STATES COURT OF FEDERAL CLAIMS

Congressional Reference No. 02-173X

| | | |
|---|---|---|
| J.L. SIMMONS COMPANY, INC., Plaintiff, | ) | |
| v. | ) | (Review Panel) |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

DEFENDANT'S REVIEW PANEL BRIEF

The Hearing Officer reported that any payment by Congress to plaintiff J.L. Simmons Company, Inc. ("Simmons") would be a gratuity. HR 15.[1] Simmons excepted and argues that there are four errors in the Hearing Officer's report. Br. i. First, Simmons argues that the Hearing Officer applied the wrong equitable standard for a Congressional Reference case. Second, even if the Hearing Officer applied the correct standard, Simmons claims that the Government's conduct was "wrongful." Third, Simmons's excepts to the Hearing Officer's conclusion that the Government did not delay the resolution of Simmons's case. Fourth, Simmons challenges the Hearing Officer's finding that an attorney fee award to Simmons's would also be a gratuity. Id. We respond to Simmons's exceptions as follows.

[1] The Hearing Officer's report is cited as "HR #." The relevant Court of Claims decision, J.L. Simmons Co., Inc., v. United States, 412 F.2d 1360 (Ct. Cl. 1969) is cited as "Simmons at #." Simmons's Review Panel Brief is cited as "Br. #." The appendix to Simmons's Review Panel Brief is "Br App #." The appendix to the supplement to Simmons's motion for a favorable hearing officer's report is "Supp App #."

STATEMENT OF FACTS AND SUMMARY OF PREVIOUS PROCEEDINGS

Due to the passage of time (over 50 years with regard to many of the facts), the record in this case is very limited. In fact, because Simmons's Court of Claims case was finally resolved in 1970, some 33 years before this Congressional Reference case came into being, the Government no longer possess any of the records related to the dispute, with the exception of the two reported decisions of the Court of Claims.[2] Consequently, aside from several ancillary submissions from Simmons, the Simmons decision is the primary or sole source of factual information related to its Congressional Reference complaint. In the proceedings before the Hearing Officer, the Government agreed to treat the Simmons decision effectively as stipulated facts. HR 2, n.2. We reiterate that stipulation here.

Simmons performed a construction contract for the Government from 1949 to 1953. HR 2. After completion, Simmons sought review of the contracting officer's resolution of its requests for increased compensation. HR 4. Simmons presented its claims to the VA's contract appeals board ("VA Board") according to the procedures that existed at the time. HR 4; Supp App 3, pp. 233 et seq. These procedures expressly called for the VA board to gather documentary evidence from the Government without Simmons's participation and after the conclusion of Simmons's presentation. Id. Although these procedures prevented Simmons from cross-examining the proponents of the Government's evidence, they did

[2] The two reported cases are J.L. Simmons Co., Inc., v. United States, 304 F.2d 886 (Ct. Cl. 1962)(denying Government's motion for partial summary judgment), and J.L. Simmons Co., Inc., v. United States, 412 F.2d 1360 (Ct. Cl. 1969)(determining Government liability for certain aspects of Simmons's claims). We will refer to the later decision as "Simmons."

provide Simmons with an opportunity to respond to that evidence after a draft decision was issued by the VA Board.[3] Id. Also, a consultant who had been a technical advisor to the contracting officer (Mr. Harding) also served as a member of the VA Board.[4] HR 4. Both Simmons's and the Government's evidence was presented to the VA Board in 1955 and 1956, and the VA Board issued its decision in 1959. HR 5. The VA Board granted one of Simmons's claims, partially allowed three, and denied one of Simmons's claims. Id.

Simmons promptly appealed to the United States Court of Claims. Id. After years of delay caused by the Supreme Court's review of the Wunderlich Act ("Wunderlich"), and by a series of summary judgment and other motions, the Court of Claims case was generally decided in Simmons's favor in 1969. HR 5-6; Simmons. The entire dispute was resolved in a final compromise settlement in 1970. HR 6.

In addition to challenging the substance of the VA Board's decision, Simmons's 1959 Court of Claims complaint also alleged that the VA board's consideration of ex parte evidence and Mr. Harding's role upon the VA Board was a "travesty upon administrative justice" implying "bad faith," among other things.

---

[3] The record indicates that the Government presented evidence against Simmons's claims to the VA Board and that Simmons responded to that evidence in writing. HR 4. The record does not specifically reflect whether Simmons's response was made before or after the VA Board considered the matter and/or issued a draft decision.

[4] The record does not reflect what advice Mr. Harding provided to the contracting officer, whether or not it was favorable to Simmons's claims, or how it may have affected the contracting officer's decision. Similarly, other than the fact that Mr. Harding was the chairman, the record does not reflect the specifics of Mr. Harding's role on the VA Board, for example, how he voted on Simmons's claims and whether he otherwise affected the final decision of the VA Board.

HR 5. The Simmons decision, however, was based upon the legal substance of Simmons's claims and did not rely upon the procedural issues raised by Simmons. Simmons at 1360-1383. The Court of Claims did refer to Simmons's procedural allegations when it denied Simmons's claims for interest – there being no right under then-existing law for a prevailing contractor to recover interest upon claims. Simmons at 1383-1390.

After the Court of Claims case was resolved in 1970, Simmons set about attempting to obtain private relief from Congress for the payment of interest and attorney fees. HR 1. In 2003 Simmons finally obtained this Congressional Reference. HR 6.

After a two-phase exchange of briefs, oral arguments, and a submission of supplemental materials by Simmons, the Hearing Officer determined that Simmons's claims should be evaluated under the standard set forth in California Canners & Growers v. United States, 9 Cl. Ct. 774 (1986). HR 8. Applying that standard, the Hearing Officer concluded that Simmons had no equitable claim primarily because there was no showing of Government fault or wrongdoing. HR 1-15. The Hearing Officer determined that, although out of step with today's standards, the VA Board procedures were consistent with the approach used by other Government agencies at the time, were not a violation of due process or statute (including the Wunderlich Act), and that the VA Board did not intentionally violate the terms of Simmons's contract. HR 12. Consequently, the Hearing Officer concluded that there was no Government fault or wrongdoing upon which to base an equitable claim and that any payment to Simmons would be a gratuity. HR 15. The Government accepted the Hearing

Officer's report. Simmons's filed a notice of exceptions which initiated these proceedings before the Review Panel.

## ARGUMENT

### 1. Standard Of Review

We agree with Simmons that in a Congressional Reference, the Review panel applies a "clearly erroneous" standard to review the Hearing Officer's findings of fact and a de novo review to the Hearing Officer's conclusions of law. RCFC Appendix D ¶ 7; Merchants National Bank of Mobile v. United States, 7 Cl. Ct. 1, 8-9 (1984). Here, the Hearing Officer's findings of fact were not clearly erroneous and the Hearing Officer's conclusions of law were correct.

### 2. The Hearing Officer Correctly Recognized That An Equitable Claim In A Congressional Reference Requires A Showing Of Wrongful Government Conduct

Simmons "readily acknowledged" to the Hearing Officer that the prevailing Congressional Reference standard for equitable claims (established in California Canners) requires at least a "negligent or wrongful act" by the Government in order for an equitable congressional reference claim to exist. HR 8-9. Simmons now suggests that its own acknowledgment of that standard was "in error" and that the Hearing Officer also erred when he applied the California Canners standard to Simmons's claim. Br. 1. Instead, Simmons now argues that the old standard, discussed in Burkhardt v. United States, 84 F. Supp. 553 (1949)(which requires only a showing of Government obligation based upon "broad moral" principals), actually still applies and should have been used by the Hearing Officer. Br. 15. Simmons relies upon Land v. United States, 29 Fed. Cl. 744 (1993), to support its position, equating Land with Burkhardt. Br. 13-15.

Simmons's confusion about its own position aside, California Canners is the correct standard and an equitable claim requires a showing of wrongdoing by the Government:

> The rule now uniformly applied is stated in California Canners & Growers Ass'n v. United States, 9 Cl. Ct. 774, 785 (1986) "'An equitable claim on a Congressional reference must rest on some unjustified governmental act that caused damage to the claimants. Absent a finding of negligence [or wrongdoing] on the part of governmental employees, any award . . . would be a gratuity'" (quoting Wong v. United States, Cong. Ref. No. 3-74, slip op. at 12-13 (Ct. cl. Nov. 23, 1977)). Expressed in more concrete terms, what we are talking about are situations in which a claimant, though injured by Government action, either has no remedy under existing law or the remedy has become barred by the statute of limitations.

Spalding & Son, Inc. v. United States, 28 Fed. Cl. 242, 250 (1993). Further, "a recommendation of an award without fault would be 'erroneous as a matter of law.'" California Canners, 9 Cl. Ct. at 786.

Simmons's arguments to the contrary, a proper reading of California Canners, Spalding, and other congressional reference cases demonstrate clearly that the "deferential" "broad moral equitable" Burkhardt standard is incorrect and that such a standard is not appropriate for this congressional reference. As the Review Panel stated in Spalding, "[t]hat [Burkhardt] view no longer finds favor. . . [the California Canners standard], then, is the equitable claim standard that we adhere to." Spalding, 28 Fed. Cl. at 249.

Despite this clarity, Simmons now attempts to resurrect the Burkhardt standard by suggesting that it has "continued to be used in more recent cases," Br. 13, citing Land v. United States, 29 Fed. Cl. 744 (1993), and claiming that "the Land standard is essentially the same standard utilized by the Court in Burkhardt." Br. 13. This is a strange argument because the

Hearing Officer cited Land along with California Canners and Spalding for the opposite proposition – that an equitable claim must be supported by a negligent or wrongful act. HR 8. Although the Land decision does contain dicta[5] that traces the definition of equity and equitable claims, and cites pre-California Canners decisions in doing so, Land clearly states

> To obtain a favorable recommendation from the court on an equitable claim, plaintiff must show: (1) that defendant, acting through the United States Army, committed a negligent or wrongful act; and (2) this act caused damage to the plaintiffs [citing California Canners and others]

Id. at 752. The Land decision was obviously not meant to revive the Burkhardt standard, as Simmons suggests. Further, the quoted language above is virtually identical to the standard employed by the Hearing Officer in this case, which Simmons now suggests was erroneous. HR 8; Br. 12.

In sum, Simmons is simply chasing windmills when it quotes from Burkhardt, cites cases that preceded California Canners, and suggests that Burkhardt should be applied because it is "the more appropriate standard to be used because it is in keeping with the legislative intent regarding congressional private relief." Br. 12-13. That correct standard for equitable claims has already been decided in California Canners and clearly restated in Spalding, and the Hearing Officer in this case was certainly correct to apply the California Canners standard.

[5] The Land decision denied of a motion for summary judgment.

3. The Hearing Officer Correctly Applied The California Canners Standard And Found That Simmons Does Not Have An Equitable Claim

Simmons also argues that the VA Board's conduct was wrongful under the California Canners standard, and therefore the Hearing Officer should have found an equitable claim even if Simmons is incorrect about the Burkhardt standard. Br. 2-6. Simmons supports this argument by suggesting that it presented "undisputed evidence . . . that the Board's ex parte procedures were in violation of the Wunderlich Act, 41 U.S.C. § 321, et seq." Br. 2.

This is a remarkable argument for Simmons to make here. Simmons has been calling the VA's procedures a "travesty" since 1959 but argues here, apparently for the first time, that this "travesty" was actually a violation of statute. This is an argument that could certainly have been made in 1959, but was not, and is in fact a "legal claim" not an equitable one. In addition, to create or change a fundamental legal argument this late in the proceedings is disingenuous, especially where the gist of Simmons's entire case is that it was not given a fair opportunity to respond to the Government's evidence.

Simmons also suggests that its violation-of-statute argument was "ignored" by the Hearing Officer. Br. 3. Yet Simmons cites only to the oral argument before the hearing officer as the location where this purported violation was allegedly "discussed at length." Id. In fact, a fair reading of the cited transcript reveals that Simmons's new argument was not clearly stated, even at the oral argument. Br. Exhibit 1. Nor was it discussed, at all, in the supplement filed by Simmons (which was simply the

three bits of legislative history discussed at oral argument). Supp App 1-3. This, despite the Court's invitation to Simmons to "summarize your views" regarding this point. Br. Exhibit 1, p. 19.

The awkwardness of Simmons's argument notwithstanding, the simple resolution lies in the fact that the VA's procedures were already examined in detail in J.D. Hedin Construction Co. v. United States, 408 F.2d 424 (Ct. Cl. 1969). Although Simmons tries to sidestep Hedin by suggesting that the Hedin decision does not "involve[] any real analysis of the issue," Br. 6, the Court of Claims expressly held in Hedin that

> [i]n the milieu of the 1950's in which this Board hearing was conducted, it was not a clear violation of due process or the Wunderlich Act to base the administrative determination on this type of ex parte, layered, informal proceeding. Many such 'hearings' were held and we cannot say that, in that era, they were wholly invalid.

Id. at 427. Thus, no matter how clumsily presented by Simmons, the Hearing Officer did not "ignore" Simmons's argument that the VA Board procedure was a violation of the Wunderlich Act, and correctly found to the contrary. HR 12. Further, the Hearing Officer was correct to rely upon cases such as Hedin when it determined that the VA Board's application of its procedure was not wrongful. Id.

Against this formidable authority, which exonerates the VA's ex parte procedures as obsolete but not wrongful, Simmons retreats to a position that Mr. Harding's role as an advisor to the Contracting Officer and chairman of the VA Board was "uniquely egregious." Br. 5. It is true, as Simmons argues, that "none of these cases [cited by the Hearing Officer at HR 12] involved the situation in plaintiff's case where an interested

party (Mr. Harding) chaired the tribunal." Br. 5. But equally true, and fatal to Simmons's claim, is the fact that there is absolutely no evidence in the record to demonstrate that Mr. Harding improperly considered Simmons's claims, or otherwise acted wrongfully in his consideration of Simmons's claims. Instead, and contrary to Simmons's general argument that Mr. Harding's dual role created irrefutable bias, is the plain fact that the VA Board allowed or partially allowed four out of Simmons's five claims. HR 3-5.

In short, there is proof that the VA Board that was chaired by Mr. Harding was more generous to Simmons than the contracting officer whom Mr. Harding advised, and no evidence whatsoever that Mr. Harding's presence upon the VA Board resulted in bias against Simmons. Without substantial evidence that Mr. Harding's presence upon the VA Board actually harmed Simmons, there can be no finding that his presence was wrongful.

Simmons also suggests that it would not be preferential treatment for it to receive an award of interest and attorney fees because of the "similar circumstances" between this case and Purvis v. United States, 216 Ct. Cl. 398 (1978), where this Court reported an equitable claim for interest and attorney fees to Congress following a lengthy contract litigation. Br. 9-10, 11. Simmons fails to refute, however, the Hearing Officer's finding that Purvis took place prior to the change in equitable standards from Burkhardt to California Canners. HR 9. There was no evidence of wrongful conduct in Purvis, just as there is none here.

In any event, the Hearing Officer’s conclusion that an award to Simmons would constitute preferential treatment is well

supported by Benoit v. United States, 2001 WL 567737, *5 (Fed. Cl. 2001)(Congressional Reference):

> The Hearing Officer correctly did not determine the amount of damages to which plaintiffs would be entitled had this claim arisen in 2000. Rather, the Hearing Officer reviewed the 1984 damage award to determine whether the "original action was incorrect in law or fact." Benoit, slip op. at 4 (citing 32 C.F.R. § 536.24b(a)). Thus, the Hearing Officer's conclusion is that in 1984 plaintiffs were entitled to an award of $485,000. Essentially, plaintiffs' request is a claim for loss of use of the $415,000 balance which has not yet been paid. However, there is no provision in the Military Claims Act for additional compensation for any delay in payment, such as an award of interest. See 10 U.S.C. § 2733. Therefore, any such additional compensation in favor of plaintiffs would be preferential treatment not available to all other claimants under the Military Claims Act. Such preferential treatment is disfavored in Congressional Reference matters. See Mackie v. United States, 172 Ct. Cl. 393, 398 (1965).

Also, in Estate of Braude v. United States, 38 Fed.Cl. 476, 487 (1997), another congressional reference, this Court held:

> Plaintiff requested interest on the "back pay" award, Tr. 17, but interest is permitted in congressional reference cases only when a statute waives the government's sovereign immunity against interest on the particular category of damages found. Gay St. Corp. v. United States, 130 Ct.Cl. 341, 350, 127 F.Supp. 585 (1955); see, e.g., Spalding & Son, Inc. v. United States, 24 Cl.Ct. 112, 161-62 (1991) (interest available in congressional reference case arising from government contract because Contract Disputes Act authorizes interest), modified on other grounds, 28 Fed.Cl. 242 (1993). Interest is available under the Back Pay Act, 5 U.S.C. § 5596(b)(2), but a failure to hire does not state a claim under that act, Lewis v. General Services Administration, 54 M.S.P.R. 120, 123 (1992). Moreover, the statute was not in effect during the years of the alleged blacklisting. See Pub.L. 89-380, 80 Stat. 94 (1966). Because interest is not available under any applicable statute, or even under the FTCA, 28 U.S.C. § 2674 (which, as the hearing officer stated, does not apply), the

recommended award should not include interest.

These cases hold squarely that Simmons should not receive a recovery of interest and other costs where all other litigants at the time were not entitled to seek them. The Hearing Officer was correct to rely upon them. HR 9-10.

4. <u>The Alleged Factual Errors In The Hearing Officer's Report Are Trivial And Irrelevant</u>

The Hearing Officer devoted a single paragraph to a cursory examination of the delays encountered by Simmons, determining that "only a few years of the delay experienced by plaintiff can even arguably be attributed to the government's 'wrongful' conduct" and concluding that numerous other contractors were affected by Wunderlich without payment of interest upon their claims either. HR 13. In doing so, the Hearing Officer incorrectly identified the year that the VA Board rendered its decision as 1956 instead of 1959. Compare HR 13 with HR 5. Simmons attempts to capitalize upon this "error" by arguing that the Hearing Officer "implies that plaintiff is responsible for this delay of three years because it did not promptly file its petition for review in the Court" and that such an (implied) finding is "clearly erroneous." Br. 6-7.

In reality, the Hearing Officer made no such finding, and the difference between 1956 and 1959 is meaningless. Instead, the Hearing Officer simply observed that Wunderlich created delays in numerous contract cases, including this one, from 1951 through 1966, and that the affected contractors did not receive interest payments for the delays. HR 13. Because of this, the "few years" to which the Hearing Officer referred are between 1966 (the conclusion of Wunderlich) and 1970 (the resolution of

Simmons's Court of Claims case). Thus, the Hearing Officer pointed out only that Wunderlich, not the VA Board's procedures, caused the lions share of the delay to the resolution of Simmons's case. HR 13. This is an irrefutable conclusion inasmuch as the alleged wrongful conduct was completed by 1959. If Wunderlich was not responsible for the lion's share of the delay, then Simmons's case would have been resolved promptly after 1959, instead of waiting another 10 years.

Simmons argues further that "but for" the VA's procedures, Simmons would not have had to appeal the VA Board's decision at all. Br. 7. This presumes either that Mr. Harding's presence on the VA Board, or Simmons's inability to cross examine the authors of the three Government reports, completely determined the outcome of the VA Board's decision. But that idea is totally unsupported. There is no evidence whatsoever that removing Mr. Harding from the VA Board or permitting Simmons to cross examine the authors of the Government's reports would have led to full allowance of Simmons's claims.

Contrary to Simmons's "but for" argument is the fact that the Court of Claims decision on the merits did <u>not</u> find that the VA Board decision should be reversed because of subnormal procedures – it was a substantive decision. Thus, there is no proof at all that the VA Board's procedures controlled the outcome of the VA decision in 1959. Simmons's claim that but for the VA Board procedures it would not have had to appeal to the Court of Claims is sheer speculation.

5. The Hearing Officer's Decision With Regard To Simmons's Attorney Fee And Expense Claims Is Correct

Simmons devotes a little over one page of its Review Panel brief presenting two disjointed arguments, both of which Simmons appears to recognize as moot. First, although the Hearing Officer did present a discussion of the long-standing rule in the United States that each party normally bears its own attorney fees, HR 13-14, Simmons recognizes that the Hearing Officer "eventually gets to the relevant inquiry, whether wrongful conduct occurred, . . . . " Br. 10. Indeed, the Hearing Officer concluded his discussion of this point "[i]n short, as is the case with plaintiff's interest claims, there is no indication that the government committed a wrong that should lead to the recovery of these litigation expenses." HR 14.

Simmons also appears to argue against a non-existent decision by the Hearing Officer to "disregard" the language of the reference from Congress. Br. 11. In fact, the Hearing Officer only noted that the language of the reference did not require an award of litigation expenses just because the words "litigation expenses" were contained in the bill. HR 14-15. Neither the Government nor the Hearing Officer has attempted to treat Simmons's claim for litigation expenses differently from the claim for interest. Both require a finding of wrongful conduct, and the Hearing Officer correctly found that an award of either type of relief would constitute a gratuity.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Branch
8th Floor, 1100 L. St. N.W.
Washington, D.C. 20530

Tele: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

December 8, 2004

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 8, 2004, I caused this document to be served by the Court's Electronic Case Management System to all parties of record.

s/Brian S. Smith