**CONGRESSIONAL REFERENCE**
**To The**
**UNITED STATES COURT OF FEDERAL CLAIMS**

**Congressional Reference No. 02-173X**

| | | |
|---|---|---|
| **J. L. SIMMONS COMPANY, INC.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Judge Firestone** |
| **THE UNITED STATES** | ) | |
| **Defendant** | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S REVIEW PANEL BRIEF**

**Table of Contents**

Plaintiff's Reply to Defendant's Review Panel Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

It Cannot Be Denied That The Original Veterans Administration Contract
Appeals Board Hearing Violated The Requirements Of The Wunderlich Act . . . . . . . . . 1

Granting Plaintiff The Relief It Seeks Will Not Constitute
Prefential Treatment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

The Extraordinary Delays Plaintiff Experienced Were
Caused By The Board's Wrongful Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

The Type Of Wrongful Conduct Necessary To Establish A Reference
Case Equitable Claim Should Be Expanded To Include Conduct
Most Reasonable Persons Would Consider Wrongful . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Table of Authorities

**Statutes**
28 U.S.C. §2509 . . . . . . . . . . 16, 17

41 U.S.C. §321 . . . . . . . . . . 1

**Supreme Court Cases**
United States v. Carlo Bianchi & Co.,
373 U.S. 709 (1963) . . . . . . . . . . 4, 13

United States v. Anthony Grace & Sons, Inc.,
384 U.S. 424 (1966) . . . . . . . . . . 13

United States v. Utah Construction & Mining Co.,
384 U.S. 394 (1966) . . . . . . . . . . 13

**Court of Federal Claims and Predecessor Courts Cases**
Baltimore Contractors, Inc. v. United States,
226 Ct. Cl. 394 (1981) . . . . . . . . . . 7

Benoit v. United States,
2000 WL 1134472 (Cong. No. 98-858X, slip op. (Fed. Cl. 2000) . . . . . . . . . . 11

Burkhardt v. United States,
113 Ct. Cl. 658 (1948) . . . . . . . . . . 14-16

California Canners & Growers Association v. United States,
9 Cl. Ct. 774 (1986) . . . . . . . . . . 11, 14, 15

Estate of Braude v. United States,
38 Fed. Cl. 476 (1997) . . . . . . . . . . 10

J. D. Hedin Construction Co. v. United States,
187 Ct. Cl. 45 (1969) . . . . . . . . . . 3, 5, 6

J. L. Simmons Co., Inc. v. United States,
188 Ct. Cl. 684 (1969) . . . . . . . . . . 7, 9

Thomas C. Nibali v. United States,
225 Ct. Cl. 8 (1980) . . . . . . . . . . 12

Purvis v. United States,
Congressional Reference No. 1-84 . . . . . . . . . . 11, 12

Joseph H. Roberts v. United States,
174 Ct. Cl. 940, 948 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Sternberger v. United States,
185 Ct. Cl. 528 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Other Federal Courts Cases**

Malan Construction Co. v. United States,
318 F. 2d 709 (2nd Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Law Review Articles**

Armed Services Board of Contract Appeals,
Tyrant Or Impartial Tribunal,
Gilbert Cuneo, 39 ABA Journal, 373 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Armed Services Board of Contract Appeals,
Anatomy of a Dispute,
Louis Spector, 20 Federal Bar Journal 398 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Legislative Note
Cornell Law Quarterly, Vol. 40, p. 355 (1954-55) . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

## PLAINTIFF'S REPLY TO DEFENDANT'S REVIEW PANEL BRIEF

Defendant's brief includes factual and legal errors, mischaracterizations of plaintiff's arguments and other objectionable elements, to which plaintiff replies herein.

### It Cannot Be Denied That The Original Veterans Administration Contract Appeals Board Hearing Violated The Requirements Of The Wunderlich Act

As stated previously, in oral argument before the Hearing Officer, and in plaintiff's exceptions to his report, the legislative history of the Wunderlich Act, 41 U.S.C. §321 *et seq.*, makes clear that one of the purposes of Congress in passing the act was to improve the dispute resolution procedures of the federal agency boards of contract appeals. The legislative history also makes it clear that Congress specifically had in mind in this respect the *ex parte* procedures of the Veterans Administration Contract Appeals Board ("Board") utilized at the time of the Wunderlich Act's passage in 1954 as well as other objectionable practices, Plaintiff's Exceptions To Hearing Officer's Report (hereinafter "Exceptions"), p. 3[1].

In addition to the legislative history, there is an abundance of other authority that clearly establishes that it was well understood at the time of the Board's initial hearing of plaintiff's case that the Wunderlich Act was intended to prohibit the appeals boards' use of *ex parte* procedures. For example in a memorandum dated July 15, 1954 an attorney for the Department of the Interior advised the then acting Associate Solicitor of the Department of Interior that the passage of the Wunderlich Act necessitated " . . . an evaluation of its effect on appeal procedures under 'disputes clauses' usually contained in contracts of the United States Department of

---

[1]The *ex parte* procedures which Congress specifically mentioned as being objectionable in the Wunderlich Act's legislative history were identical to those used subsequently in plaintiff's hearing before the Board in 1955 and 1956.

Interior and its bureaus and agencies.," (Ex. 1, p. 99).[2] The attorney further stated in his memorandum that by adoption of the requirement of "substantial evidence" in the Wunderlich Act, " . . . the Committee intended to correct among other things, the lack of opportunity of contractor-appellants to become acquainted with the evidence in support of the Government's position. The Committee points out that hearing procedures should be conducted in such a way as to require each party to present openly its side of the controversy and afford an opportunity of rebuttal. *Ex Parte* records which are not made part of the record should not be utilized in arriving at findings of facts and decisions." [footnotes omitted], (Ex. 1, p. 100). The attorney went on to suggest the creation of a formal appeals board within the Interior Department.[3] Also interesting to the present case in this respect was the admonition included in the memorandum that no board member " . . . shall have been directly involved in the letting or administration of the contract in dispute.," (Ex. 1, p.103). See further discussion in this regard concerning Mr. Harding's inclusion on the Board, *infra*, pages 6-8.

Legal commentators at the time also were aware of the significance of the Wunderlich Act's "substantial evidence" requirement. See, *e. g.*, Cornell Law Quarterly, Vol. 40, 1954-55, pp. 355-361. In a legislative note the following statement concerning the substantial evidence

---

[2]Plaintiff's Exhibit 1 is an excerpt from a document exceeding 300 pages in length. The document is entitled, "Operation And Effectiveness Of Government Boards Of Contract Appeals," a report prepared by Professor Harold C. Petrowitz for the U.S. Senate Select Committee on Small Business, 89th Cong. 2nd Session, Document No. 99. Due to its great length, the entire document is not submitted herewith. For convenience the page numbers cited here correspond to the page numbers found in the original document.

[3] The Interior Department along with the Veterans Department were the two agencies specifically mentioned by name in the legislative history of the Wunderlich Act as having objectionable appeals board procedures.

requirement of the Wunderlich Act was made at page 358:

> The Committee believed that the adoption of such a standard of substantial evidence would correct the existing condition by which contractors were afforded little or no opportunity to become acquainted with the evidence in support of the Government's position.[19]

[19] This statement was actually applicable only to those agencies which had not provided for a full fledge Board hearing such as is available in the Department of Defense, General Services Administration and the other major contracting agencies.

The Court's former Trial Commissioner, Louis Spector, then the Chairman of the Armed Services Board of Contract Appeals made similar comments in an article published in the Federal Bar Journal, "The real effect of the Wunderlich Bill, and this could have been predicted from reading the report of the House Judiciary Committee, [citing H. Report No. 1380, 83rd Congress, 2nd Session (1934)] was to insure sounder, quasi-judicial safeguards, and the making of better records in agencies which theretofore had not developed procedures comparable to those employed by the Armed Services Board of Contract Appeals, Anatomy of a Dispute, Louis Spector, 20 Federal Bar Journal 398, 406-407 (1960).

The Government's response to plaintiff's argument with respect to the effect of the Wunderlich Act, found at page 8 of its brief, is to misstate that this argument is being advanced by plaintiff for the first time, to characterize it as disingenuous and otherwise ignore the merits of the argument with the exception of a passing reference to the case of *J. D. Hedin Construction Co. v. United States,* 187 Ct. Cl. 45, 50-52 (1969). Plaintiff has previously addressed the *Hedin* case in its exceptions to the Hearing Officer's Report, but will return to it with further comments shortly. First, however, Plaintiff strenuously objects to defendant's misstatement of fact that plaintiff has never asserted previously that the Board's procedures

violated the Wunderlich Act. Such an assertion was made previously before the Court in response to issues raised by the Trial Commissioner McConnaughey in an October 7, 1963 order issued in the wake of the Supreme Court's decision in *United States v. Carlo Bianchi & Co.*, 373 U.S. 709 (1963). The pertinent part of plaintiff's memorandum, submitted on March 18, 1964 in response to the Trial Commissioner's order is included herein, (Ex. 2).[4]

Plaintiff clearly asserted that the *ex parte* nature of the Board proceedings constituted a violation of the Wunderlich Act, (Ex. 2, pages 23 and 38). Specifically in this regard, plaintiff stated, "Plaintiff insists that such procedures constituted a Wunderlich defect and consequently deprived all of the Board's findings of any conclusiveness that they might have otherwise possessed." and "The conduct of the board constituted a Wunderlich defect going to the heart of the administrative process by which plaintiff's claims were adjudged, and accordingly, vitiated all of the Board's findings of fact." (Ex. 2, pp. 23 and 38).

Defendant's contentions that plaintiff has never previously asserted that the Board's hearing procedures violated the Wunderlich Act, in addition to being a misstatement of fact are immaterial. What difference does it make, if in fact plaintiff was asserting for the first time in the long history of plaintiff's case that the Board's procedures constituted a violation of the Wunderlich Act? Defendant does not say and it is respectfully submitted that there is none. The focus of the inquiry is to determine whether, in the words of the Hearing Officer, there is some violation of a standard of conduct established by statute or regulation. The Wunderlich Act established a standard of conduct for board hearings in 1954 and it cannot be denied that the

[4]The entire memorandum is 120 pages in length. Again in the interest of brevity only the part of the memorandum pertinent to the Wunderlich Act violations are included here as Exhibit 2.

Board's original hearing, conducted in 1955 and 1956, was not conducted in accordance with this standard.

In an attempt to counter this undeniable fact, the Government and the Hearing Officer rely on three cases, *J. D. Hedin Construction Company*, *supra*;*Malan Construction Co. v. United States*, 318 F. 2d 709 (2nd Cir. 1963); and *Sternberger v. United States*, 185 Ct. Cl. 528 (1968). Only the *Hedin* case is remotely authoritative on this particular point. The *Malan* case includes only allegations that constitutional violations occurred. There is no mention of the Wunderlich Act. The *Sternberger* case, contrary to the assertion made by the Hearing Officer at page 12 of the Report, did not involve procedures similar to those employed by the Board in plaintiff's case. The case does not include any discussion of the procedures employed, other than the fact that someone other than the ASBCA member who conducted the hearing may have written the board's opinion; a fact that is entirely immaterial to the issues in this case. Nor can it be inferred that "similar procedures" were involved. There is no evidence in the record to suggest that the ASBCA was using "similar procedures" at the time the *Sternberge*r case was heard by the ASBCA. In fact all of the evidence in the record supports the contrary contention that throughout its existence the ASBCA has used procedures that were fully compliant with the Wunderlich Act, *supra*, page 3; Motion for Leave To File Supplement To Plaintiff's Motion For A Favorable Hearing Officer's Report, Exs. 1, p. 78; 2, pp.93-94. Accordingly, *Sternberger* also cannot be properly relied upon as authority for the proposition that the Board's *ex parte* procedures did not violate the standard of conduct required under the Wunderlich Act, contrary to the Government's argument.

The *Hedin* case lacks persuasiveness as authority for this proposition as well. Although *Hedin* involves the same wrongful procedures plaintiff was subjected to, there is no evidence the Court considered the legislative history of the Wunderlich Act and other authority discussed, *supra*, pages 1-3. There certainly is no discussion in the opinion of the legislative history of the Wunderlich Act or any mention of any of the other authority cited, *supra*. In the absence of any such discussion it is respectfully submitted that the *Hedin* opinion should not be considered persuasive authority on this point. The value of *Hedin* as authority on this point is also undercut by the fact that the court's comments in *Hedin* were mere *dicta* and not at all neccessary to determining the outcome of the case.

The Government's response to plaintiff's argument concerning Mr. Harding's inclusion on the panel is remarkable for it ignores entirely the case law cited by plaintiff in support of plaintiff's contentions that Mr. Harding's inclusion on the panel was a violation of due process, Exceptions, pages 4-5. Instead, the Government contends Mr. Harding's inclusion on the panel was not wrongful because plaintiff has failed to prove that Mr. Harding was biased against plaintiff. The government cites no authority for its contention that plaintiff's argument must fail in the absence of proof of Mr. Harding's bias against plaintiff. Indeed the rationale behind the holdings of the cases cited in plaintiff's exceptions to the report are based upon a presumption of bias on the part of an interested party such as Mr. Harding. See also *Joseph H. Roberts v. United States*, 174 Ct. Cl. 940, 948 (1966) in which the Court held that the dual role played by the Secretary of the Smithsonian Institution as the Contracting Officer and head of the department under the disputes clause violated the Wunderlich Act, " . . . for no man can review his own decision with the requisite degree of quasi-judicial detachment and impartiality." *Roberts*

involved no allegation, much less proof, of actual bias; the Court presumed that such bias could exist. The case of *Baltimore Contractors, Inc. v. United States*, 226 Ct. Cl. 394, 396-403, 406 (1981) also can be cited in rebuttal of defendant's argument that plaintiff must prove actual bias. In pertinent part the Court stated, " . . . care must be taken to avoid any situations that possess a significant danger of improper influence. Indeed, *even where there is no claim of actual bias*, a tribunal may be disqualified merely because of the appearance of bias," referring to the relationship the board members had with the persons responsible for administration of the contract [emphasis added]. The factual situation in *Baltimore* was virtually identical to that of plaintiff's case. In a concurring opinion, Judge Kunzig stated that the relationship between the board members and the persons responsible for administering the contract constituted a denial of due process. In plaintiff's case Mr. Harding's inclusion on the panel is aggravated by the fact that the Veterans Administration had previously determined that the inclusion of an interested party, such as Mr. Harding, on its board would not be proper, Exceptions, pages 4-5.

The Government also contends that the fact the Board granted plaintiff relief in an amount greater than that granted by the Contracting Officer is proof that Mr. Harding's inclusion on the panel did not harm plaintiff. Assuming, *arguendo*, that such proof would overcome the defect of his inclusion on the panel, plaintiff respectfully submits that no such proof exists in the record for this proposition. In the first instance, defendant's argument ignores the fact that the Board significantly reduced the amount awarded to plaintiff by the Contracting Officer with respect to Claim Nos. 2 and 3,*J. L. Simmons Co., Inc. v. United States*, 188 Ct. Cl. 684, 698 (1969). The Board reduced Claim No. 2 by $43,358 from the $151,633 allowed by the Contracting Officer to the $108,275 recommended by the Board. Claim No. 3 was denied

entirely by the Contracting Officer. The Board recommended deducting an additional $43,096 from amounts that plaintiff had otherwise earned.

Nor is there any evidence in the record that it was Mr. Harding who was responsible for the Board increasing the relief it recommended be granted to plaintiff. It may well have been the other two board members who were responsible for the increases, agreeing to recommend such increases over Mr. Harding's objections. There simply is no evidence in the record one way or the other to support the Government's contentions in this regard. However, it is undeniable that once the Board proceeded in accordance with a fully Wunderlich Act compliant procedure, including Mr. Harding's removal from the panel, plaintiff was successful in receiving an award from the Board of close to 100 % of the amount claimed.

**<u>Granting Plaintiff The Relief It Seeks Will Not Constitute Prefential Treatment</u>**

The argument against granting plaintiff relief even if the Court were to find that the Board's procedures constitute wrongful conduct is based primarily on a misconception that to do so would amount to preferential treatment. This in turn is based on the perception that there are "numerous contractors" in plaintiff's shoes, Report, page 13. The Government's brief at page 12 repeats the Hearing Officer's misconception in this regard. Neither the Government nor the Hearing Officer have cited any authority for their perception in this regard, which is contrary to fact and common sense. It has been almost twenty years since the Court granted relief to Mr. Purvis for the unreasonably long delays associated with resolving his company's dispute with the General Services Administration. If in fact there were numerous other contractors who had experienced unreasonably long delays in resolving their disputes, common sense would dictate

that at least several of them would have come forward seeking relief such as Purvis obtained and plaintiff seeks. As far as plaintiff is aware it is the only such contractor to have done so. The circumstances involving plaintiff's case are, if not unique, certainly extraordinary and thus limited to a very small universe of contractors, not the numerous contractors perceived by the Government and the Hearing Officer. The unique nature of plaintiff's circumstances were acknowledged by the Court in its 1969 opinion wherein Trial Commissioner Spector stated:

> To establish the present posture of this venerable case, and to know how best to proceed with it from here, one must perforce describe where it has been. Its travels rival those of Odysseus and the Wunderlich Act has represented to it obstacles as formidable as Scylla and Charybdis.
>
> In *United States v. Carlo Bianchi & Co., Inc.* the Supreme Court described the chronology of that case as constituting "delay at its worst," and it sought by its ruling therein to ameliorate such delays in the future. Regretfully, Bianchi will have to step aside for a new champion. [footnotes omitted]
>
> *J. L. Simmons Co., Inc. v. United States*, 188 Ct. Cl. 684, 688 (1969).

Plaintiff's extraordinary, if not unique, circumstances readily distinguish it from the cases relied upon by the Government and the Hearing Officer. The numerous other contractors to which the Government and the Hearing Officer refer did not experience extraordinary delays, nor were the majority of government contractors subjected to the types of procedures used by the Board in plaintiff's case. Then as now, the Armed Services Board of Contract Appeals was the board with jurisdiction over the vast majority of government contract disputes,Armed Services Board of Contract Appeals, Tyrant Or Impartial Tribunal, Gilbert Cuneo, 39 ABA Journal, 373, 375 (1953). As discussed, *supra*, pages 3 and 5, the ASBCA has always used procedures that were fully compliant with the Wunderlich Act. It simply is not true that numerous contractors in the

1950s were forced to resolve their disputes with *ex parte* procedures similar to those employed by the Board in plaintiff's case and/or before tribunals, which included members who had been actively involved in the denial of their claims at the contracting officer level. Nor did numerous contractors have to endure unreasonably long periods of time to resolve their claims. Professor Petrowitz's study indicates that most contractors' disputes were resolved in less than 2 ½ years, most contractors believed their disputes had been resolved in a reasonable period of time, and only a tiny minority (2 of 191 responses) believed an unreasonable period of time was required to resolve their disputes before a board, (Ex. 1, p. 128). There simply is no support for the Government's and the Hearing Officer's contention or perception that plaintiff's situation is not extraordinary and thus is clearly erroneous.

The argument against the granting of interest to plaintiff is ultimately based on sovereign immunity, Report, page 10, footnote 10; Defendant's Brief, page 11, citing *Estate of Braude v. United States*, 38 Fed. Cl. 476 (1997). However there is an express waiver of sovereign immunity in this case as the referral to the Court expressly directs the Court to "proceed according to the provisions of sections 1492 and 2509 of title 28, United States Code, notwithstanding the bar of any statute of limitations, laches, or *bar of sovereign immunity* . . .," S. Res. 83, 107th Congress, 1st Session, May 8, 2001 [emphasis added]. Furthermore the relief bill, S. 846, expressly contemplates that the relief to be granted will be interest that is not otherwise recoverable at law.[5] The Court has in the past, in at least one case plaintiff is aware of, relied upon language in the referral and the relief bill to bar defenses that otherwise would be

[5] The bill also contemplates the payment of litigation expenses not otherwise recoverable at law, discussed, *infra*, pages 12- .

available to the Government to defeat private relief claims,*Benoit v. United States*, 2000 WL 1134472 (Cong. No. 98-858X, slip op. At p. 16 (Fed. Cl. 2000)[defenses of accord and satisfaction and laches expressly waived by terms of referral and bill].

The Court must also keep in mind the nature of plaintiff's claim. Unlike every other reference case relied upon by the Government and the Hearing Officer to support the argument that interest is not granted in reference cases in the absence of a statute waiving the Government's sovereign immunity, which cases involve interest only as an additament to damages sought under other theories; plaintiff's case involves a theory of damages which can only be recovered in the form of interest and litigation expenses. For the Court to find that wrongful conduct occurred establishing plaintiff's right to an equitable claim and then say but no relief can be granted because the *form* of the relief would amount to a gratuity would be both nonsensical and a new travesty inflicted upon plaintiff.

Lastly plaintiff returns to the example of *Purvis v. United States*, Congressional Reference No. 1-84. The Government and the Hearing Officer attempt to distinguish this case, contending it has no value as support for plaintiff's position because it predates the tightening of the definition of equitable claim in reference cases under *California Canners & Growers Association v. United States*, 9 Cl. Ct. 774 (1986) and subsequent cases. It is respectfully submitted that this reasoning is faulty and should not be followed by the Review Panel. Regardless of how one defines equitable claim as that term is used in reference cases, there is no legal effect on the basic rule of law that there can be no interest awarded in reference cases in the absence of a statutory waiver of the Government's sovereign immunity. In fact the record in this case indicates the Government raised this defense in *Purvis*, Plaintiff's Motion For A

Favorable Hearing Officer's Report, Ex. A, p. 3. Nonetheless, despite the Government's argument, the Court recommended the payment of interest to Mr. Purvis. Accordingly, any change to the definition of equitable claim in reference cases is immaterial to this defense. *Puris'* value as support for plaintiff's position that it is not seeking preferential treatment and that it is permissible in the special circumstances attendant to plaintiff's case to receive relief, in the form of interest, for a reference case equitable claim when there is no general statute waiving the Government's sovereign immunity is not affected by any subsequent changes in the definition of equitable claim.

For the foregoing reasons the arguments offered against plaintiff's equitable claim for interest should be rejected.

Unlike the arguments against interest which ultimately are premised upon the defense of sovereign immunity, the argument against awarding plaintiff its litigation expenses, largely comprising attorney's fees, is based upon what is commonly referred to as the American Rule. The rule generally precludes a party from recovering its attorney fees, experts and other witness costs in the absence of an exception to the rule. Plaintiff again relies principally upon the language of the relief bill, which clearly contemplates making payment of litigation expenses "not otherwise recoverable at law" to overcome any bar in the general law to recovering litigation expenses, including attorney's fees.

The Court has long stated that it is unable to award attorney fees against the United States in the absence of statutory authority,*Thomas C. Nibali v. United States*, 225 Ct. Cl. 8, 13 (1980), citing 28 U.S.C. §2412. Such authority has been granted here by the relief bill, S. 846. As discussed, *supra*, pages 10-11, the Court previously has looked to the language in the relief

bill and referral to find Congressional intent to waive defenses that might otherwise bar recovery for an equitable claim.

**The Extraordinary Delays Plaintiff Experienced Were**
**Caused By The Board's Wrongful Conduct**

Defendant dismisses the argument that the delays plaintiff experienced were caused by the Board's wrongful conduct with its contention there is no proof that utilization of Wunderlich Act compliant procedures would have affected the outcome. Implicit in such an argument is the admission that with such proof, causation is conceded.

The absurdity of defendant's contention is obvious. Defendant ignores the result of the second Board hearing in 1966, which did comply with the Wunderlich Act. The Veterans Administration revised its hearing procedures in 1960, after plaintiff filed its petition in this Court's predecessor and before the case was remanded to the Board in the wake of the Supreme Court's decisions in *Bianchi*, *supra*,*United States v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966) and *United States v. Anthony Grace & Sons, Inc*., 384 U.S. 424 (1966), (Plaintiff's Motion To Supplement Its Motion For A Favorable Hearing Officer's Report, Ex. 3). After this second hearing, the Board significantly increased the amount awarded to plaintiff (Complaint, Pars. 10, 20, 25 and 26; Answer Pars. 10, 20, 25 and 26). Accordingly, the Government's contention there is no evidence that changing the Board's hearing procedures made any difference to the outcome is meritless.

**The Type Of Wrongful Conduct Necessary To Establish A Reference Case Equitable Claim Should Be Expanded To Include Conduct Most Reasonable Persons Would Consider Wrongful**

Pursuant to *California Canners*, *supra*, and subsequent cases the Hearing Officer determined that in order to establish an equitable claim, wrongful conduct in the form of negligence or violation of a code of conduct established by statue or common law would be required. Although plaintiff firmly believes that it has met this standard, it also has come to believe the Court has adopted an unduly restrictive definition of what is required to establish wrongful conduct. Plaintiff further asserts that the unduly restrictive definition of wrongful conduct is both contrary to the intention of Congress and approximately 40 years of case law in the Court, extending back in time to the Court's decision in *Burkhardt v. United States*, 113 Ct. Cl. 658 (1948) through to the opinion in *California Canners* in 1986*,* approximating the time of the sea change according to the Hearing Officer.

The 40 years of case law, exemplified by the *Burkhardt* opinion and the other cases cited in plaintiff's exceptions, pages 12-13, is squarely aligned with Congress' intent with respect to the private relief process. Plaintiff has set forth its argument in this respect in its exceptions, pages 12-15 and further mention thereof is accordingly unnecessary herein. However, it is worth noting that defendant's brief fails to dispute in any way plaintiff's contentions regarding Congress' intent with respect to private relief, *i.e.*, that the purpose is to determine whether there is a broad moral obligation on the part of the Government to extend relief to an individual. Although *Burkhardt* is squarely in line with this purpose, *California Canners* is squarely opposed. How is this opposition to Congress' intent dealt with by the Court? The answer is that

it has not been dealt with. Neither in *California Canners*, nor in any of the subsequent cases adopting the standard laid down in *California Canners* is there any discussion of Congressional intent.

Plaintiff's reading of *California Canners* and subsequent cases indicates the unduly restrictive standard derives from the Court's concern that the *Burkhardt* standard involved no requirement of wrongful conduct. The Court has stated that in the absence of wrongful conduct on the part of the Government any payment to a reference case plaintiff would be a mere gratuity.

Plaintiff does not disagree with the contention that there must be wrongful conduct, but does disagree with the notion that in order to be wrongful, the conduct must be akin to negligence or violate a standard of conduct embodied in a statue or the common law. In plaintiff's view limiting wrongful conduct in this manner is unduly restrictive because it is contrary to Congress' intent with respect to private relief and therefore erroneous. Plaintiff agrees that there is little or no discussion of wrongful conduct to be found in the *Burkhardt* line of cases. However, it is respectfully submitted that in virtually all, if not all of the *Burkhardt* cases wrongful conduct can be found. It just is not always of the type required of late. The type of wrongful conduct found in the *Burkhardt* cases is of a type that most reasonable persons would describe as being wrong although there is no negligence or statutorily required or prohibited conduct involved.

An analogy may be helpful. If Neighbor A approaches Neighbor B and requests the payment of $10 in the absence of any fault or obligation, most reasonable people would agree that there is no basis for making payment and that to do so would be merely gratuitous. However, if Neighbor B accidentally breaks Neighbor A's window in circumstances that do not

involve having acted negligently or intentionally, most reasonable people would nonetheless say that Neighbor B should pay for the damage that he has caused. Most reasonable people, it is respectfully submitted, would say that Neighbor B should do so because his actions were wrong or that he would be morally obligated to do so, even if it were explained to them that Neighbor B was not legally obligated to do so. It is respectfully submitted that this is clearly what Congress has intended under 28 U.S.C. §2509 and that the Court's current definition of wrongful conduct is too restrictive, so as to preclude what would otherwise be valid equitable claims in accordance with Congress' intent. The Court should relax or expand its definition of wrongful conduct so as to permit it to act in accordance with Congress' intent. A return to the *Burkhardt* standard would correct this error.

## **Conclusion**

Plaintiff has established that its reference claim is based on wrongful conduct in accordance with the way the hearing Officer has defined it, which in turn is in accordance with the present status of the law. Congress has waived sovereign immunity with respect to payment of interest and has also waived the defenses to payment of litigation expenses. Accordingly, the

Court should issue a report to Congress stating that plaintiff has an equitable claim under 28 U.S.C. §2509 and that plaintiff should be paid $4,352,572.50 therefore.

Respectfully submitted,

Date: January 4, 2005

S/Christopher M. McNulty

Christopher M. McNulty

King & King, Chartered
Suite 400
7531 Leesburg Pike
Falls Church, Virginia 22043

(703) 564-0164

Attorney for Plaintiff, J. L. Simmons Company, Inc.