Case 1:02-cq-00173-FMA Document 55-2 Filed 01/05/2005 Page 1 of 12

89TH CONGRESS
2d Session

SENATE

DOCUMENT
No. 99

# OPERATION AND EFFECTIVENESS OF GOVERNMENT BOARDS OF CONTRACT APPEALS

## REPORT

PREPARED FOR THE

## SELECT COMMITTEE ON SMALL BUSINESS
### UNITED STATES SENATE

BY

PROF. HAROLD C. PETROWITZ

ON

METHODS OF RESOLVING CONTRACT CONTROVERSIES PERTAINING TO GOVERNMENT CONTRACTS AND SUBCONTRACTS: AN EMPIRICAL AND ANALYTICAL STUDY



JULY 28, 1966.—Ordered to be printed

U.S. GOVERNMENT PRINTING OFFICE
57-557 WASHINGTON: 1966

## Exhibit 7

### Index

(Memorandum from Paul H. Gantt, Attorney-Adviser to Associate Solicitor J. Reuel Armstrong of July 15, 1954, subject: Problems involved in contract appeal procedures with specific reference to P. L. 356, 83d Congress)


Introduction.

1. Certain criteria of the Administrative Procedure Act of 1946 apply to contract appeal procedures.
2. Evidence requirements.
3. Uniform Appeal Procedures.
   - a. Need for written rules.
   - b. Suggestion to establish three-man Board of Contract Appeals in the Department of the Interior.
   - c. Purpose of the Rules.
   - d. Findings of Fact and Decision of Contracting Officer.
   - e. Answers, Appeal Files, Trial Briefs.
     - I. Answers.
     - II. Appeal File.
     - III. Inspection.
     - IV. Memorandum of Legal and Factual Issues.
     - V. Pre-Hearing Conference.
   - f. Status of Government Counsel.
   - g. Representation of Contractor-Appellant.
   - h. Hearings.
   - i. Transcript.
   - j. Decisions.
4. Prohibition of making decision on question of law final.
5. Attorney's and Practice Manuals.
6. In-Service-Training.

Appendix I. Selected cases in which the Court of Claims considered the presence or absence of substantial evidence.
Appendix II. Government contract appeal authorities.
Appendix III. (a) Questions of law; (b) No clear cut line between questions of law and fact; (c) questions of fact.
Appendix IV. Present system of publishing appeal decisions in Department of Int.
Appendix V. Bibliography:
- (a) Disputes Machinery in Government contracts.
- (b) Law review notes on U.S. v. Wunderlich.
- (c) Principal legislative material regarding Public Law 356 of May 11, 1954 (68 Stat. 81)


[MEMORANDUM]

U.S. Department of the Interior,
Office of the Solicitor,
*Washington, D.C., July 15, 1954.*

To: Acting Associate Solicitor J. Reuel Armstrong.
From: Paul H. Gantt, Attorney-Adviser.
Subject: Problems involved in contract appeal procedures with specific reference to P. L. 356, 83d Congress.

The enactment of P. L. 356 on May 11, 1954,[1] necessitates an evaluation of its effect on appeal procedures under "disputes clauses" usually contained in contracts of the United States Department of the Interior and its bureaus and agencies.[2]

This memorandum points out important problems of contract administration and appeal procedure raised by P. L. 356; makes comments and recommendations; points out fields of possible study; and brings together references to important decisions and law articles having a bearing on the problems involved.

Particular attention was paid to the legislative history of P. L. 356; to the principles incorporated in the Administrative Procedure Act of 1946;[3] to the recommendations of the President's Conference onAdministrative Procedures;[4] to the memorandum of February 15, 1954, entitled "Reorganization—Legal Activities" (Department of Interior); and to observations and recommendations embodied in the Survey Report on the activities of the Bureau of Land Management.[5]

---

[1] 68 Stat. 81.

[2] Section 201 (a) (1) of the Federal Property and Administrative Services Act of 1949, as amended, 40 U.S.C. 471, authorizes the Administrator of the General Services to prescribe standard contract forms for the civilian agencies. Standard Form 23A (Construction Contracts) and Standard Form 32 (Supply Contracts) issued by GSA, consequently used by all Interior agencies, are the principal forms under consideration. The "disputes clauses" presently contained therein are under revision by GSA to conform with P. L. 356.

[3] 5 U.S.C. 1001 et seq., hereinafter APA.

[4] *First Report of the Conference on Administrative Procedure* called by the President of the United States on April 29, 1953.

[5] Part: "Proposed Hearing and Appeal Procedures."

### 1. CERTAIN CRITERIA OF THE ADMINISTRATIVE PROCEDURE ACT OF 1946 APPLY TO CONTRACT APPEAL PROCEDURES

The purpose of P.L. 356 is to overcome the effect of the Supreme Court decision in *United States* v. *Wunderlich*,[6] under which the decisions of Government officers rendered pursuant to the standard "disputes clauses" in Government contracts are held to be final absent fraud on the part of such Government officers.[7] The requirement of P.L. 356 that administrative action must be supported by "substantial evidence" adopts an additional standard[8] which previously was only occasionally reverted to by courts in the review of contract appeal decisions.[9] This standard intends to "correct another condition arising out of the lack of uniformity between the various departments and agencies concerned in the appellate hearing procedures under the disputes clause."[10] Lastly, P.L. 356 prohibits the insertion in Government contracts of provisions making the decisions of Government officers final on questions of law arising under such contracts.[11] The latter prohibition, unlike the other provisions of P.L. 356, not only applies to decisions of the representative of the head of any department or agency but in addition to decisions "of any administrative official."[12]

Public Law 356 does not make contract appeal procedures based on "disputes clauses" subject to the APA. The legislative history negatives any such intent. But it is equally clear that all criteria of justice and fair dealing that resulted in the passage of the APA must apply with equal or greater force to such procedures.[13]

In some respects, particularly respecting evidence requirements, P.L. 356 puts the "judicial gown" on contract appeal procedures. In other respects, such procedures, by necessity, will still fall short of the formality and requirements of agency hearings subject to the APA.[14] The type of contract appeal procedures to be employed must be determined by the size of the agencies involved and the type and volume of their contract work.

### 2. EVIDENCE REQUIREMENTS

The requirement of "substantial evidence" is found in the APA. Numerous decisions rendered by the courts will greatly help in the application of this requirement to contract appeal procedures. As understood by the House Committee on the Judiciary,[15] and as interpreted by the Supreme Court in *Consolidated Edison Company* v. *National Labor Relations Board*,[16] "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

By the adoption of this standard, the Committee intended to correct, among other things, the lack of opportunity of contractor-appellants to become acquainted with the evidence in support of the Government's position.[17] The Committee points out that hearing procedures should be conducted in such a way as to require each party to present openly its side of the controversy and afford an opportunity of rebuttal.[18] Ex Parte records which are not made part of the record should not be utilized in arriving at findings of facts and decisions.[19]

The President's Conference on Administrative Procedures recommended that in considering evidence, agencies and their officials should be encouraged to "exclude irrelevant, immaterial, and repetitious evidence."[20] Adherence to this recommendation will eliminate excessive delays and expense and prevent unduly voluminous records.[21]

---

[6] U.S. v. Wunderlich, 342 U.S. 98, 96 L. Ed. 67, 72 S. Ct. 154 (1951).
[7] H.R. Rep. No. 1380, 83d Cong., 1st Sess., p. 1 (1954).
[8] Ibid., p. 4.
[9] See Appendix I.
[10] Supra, note 8.
[11] Ibid., p. 2.
[12] In the majority of cases this will be a contracting officer.
[13] Hearings before Subcommittee No. 1, House Committee on the Judiciary, on H.R. 1839, S. 24, H.R. 3634, and H.R. 6946, 83d Cong., 1st and 2d Sess., pp. 24, 25, 88, 90.
[14] Schultz, Proposed changes in Government contract disputes settlement: the legislative battle over the Wunderlich case, 67 Harvard L. Review 217, 227 (1953).
[15] See supra, note 7, p. 4.
[16] 305 U.S. 197 (1938).
[17] See supra, note 7, p. 5.
[18] Supra note 7, p. 5.
[19] Sen. Doc. No. 8, *Administrative Procedure in Government Agencies*, 77th Cong., 1st Sess., p. 163.
[20] Supra note 4, p. 9.
[21] Ibid, p. 17–19.

Case 1:02-cv-00173-FMA Document 55-3 Filed 01/05/2005 Page 4 of 12


It should be noted again, that the "substantial evidence" requirement applies only to "the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute", and not to decisions of "any administrative official." However, the decision of such official, by necessity, must also be based on a record supported by substantial evidence to enable the reviewing authority to arrive at its determination.

Review of an agency decision under the "substantial evidence" rule can be compared in scope with the review of a jury verdict. This traditionally is narrower than review of a trial judge's findings, which must be "clearly erroneous" to be reversed.[22] Ordinarily agency review presupposes a record made after a full-dress hearing, which can be scrutinized by the court to determine whether there is substantial evidence on the whole record to support the agency's determination.[23] However, at the present time it can be only speculative whether the Court of Claims, which in the majority of all cases will be called upon to review agency determinations on contract appeals, will restrict itself to a limited review or will conduct *de novo* reviews.[24]

### 3. UNIFORM APPEAL PROCEDURES

The legislative history of P.L. 356 clearly establishes the legislative intent to bring about uniform appellate contract appeal agency procedures, and that the procedures and rules of the Armed Services Board of Contract Appeals (hereinafter ASBCA) should serve as the basic model for the fashioning of appeal procedures in other Government agencies. The minimum requirement for such agencies, and that is particularly true with respect to the Interior Department, should be to establish comparable procedures, taking into account the size, type and volume of its contracting and appeal work.

In comparing the volume of the work of the ASBCA with Interior contract appeal work, it is noted that the ASBCA in the decade antedating 1953 rendered 2,688 decisions.[25] Data in the Interior Department are only available for a seven-year period since 1947. During that period approximately 220 decisions have been rendered.[26] It seems apparent that the appeal apparatus necessary to adjudicate the multi-billion dollar business of the Department of Defense would be too expensive to be applied to the so much lesser volume of Interior contract appeal work.

Based on this premise, the contract appeal procedures and rules of several Government departments and agencies of various sizes and magnitude have been examined in an attempt to establish guideposts for the reorganization of appeals procedures in the Interior Department.

#### a. *Need for written rules*

Cuneo [27] tells of the Justice of the Supreme Court of the United States who asked in the course of an argument before that tribunal, "What are these boards of contract appeals?" Government counsel, Cuneo states, was unable to answer.

There is a definite need of written rules for the contract appeals procedures on the part of contractor-appellants and on the part of Government officials. A clearly charted procedure would of necessity result in a better record, and shorter presentation with consequent reductions of delay, expense and volume of record. The absence of written rules in the Department of Interior, and in its largest contracting agency, the Bureau of Reclamation, has been singled out in the

---

[22] Davis, *Administrative Law*, para. 254 (1951); Stern, *Review of findings of Administrators, Judges and Juries: a comparative analysis*, 58 Harv. L. Rev. 70 (1944).

[23] Jaffe, *Judicial Review: "Substantial Evidence on the Whole Record"* 64 Harv. L. Rev. 1233 (1951); Schnitz, supra note 14, at p. 237 et seq.

[24] Although the Court of Claims may grant money judgments, it has no jurisdiction to correct errors in an agency record by the process of remand. See United States v. Jones, 336 U.S. 641, 670 (1949).

[25] Cuneo, *Armed Services Board of Contract Appeals, Tyrant or Impartial Tribunal*, 39 ABA J 373, 375 (1953).

[26] The dollar volume involved in these decisions amounts to approximately ten million dollars. In 1947 there were only few appeals but the number of appeals has increased steadily with each succeeding year. For more details see memorandum by the undersigned to the Solicitor, December 11, 1953, entitled "Suggestions regarding contract appeal procedures."

[27] *See supra* note 25, at 373.

Congressional hearings.[28] The need for written rules has been recognized by former Solicitor Mastin G. White:[29]

"It seems to me unfortunate that there have been no written instructions or regulations on this subject promulgated by the Department. I think it would be highly beneficial to the contractors, and the personnel of the Department in the field concerned with these matters if everyone knew what steps should or could be taken in connection with these cases, and just what the rights and privileges of the contractors and of the Department personnel are with respect to the right to be heard, and with respect to the right to present additional evidence and either written or oral argument, and with respect to the opportunity to request reconsideration after the decision is announced."

The lack of fixed procedures has also been deplored by Solicitor Davis who emphasized the "need to be reduced to an orderly process."[30]

*b. Suggestion to establish three-man Board of Contract Appeals in the Department of Interior*

A study of the rules of the various Government agencies reveals an astonishing variety of contract appeal board rules.[31] Different methods of deciding contract appeals have been employed. However, it is common to all Government disputes "arbitrators" that they derive their authority by contractual agreement[32] between Government and Government contractor usually embodied in a "boiler-plate" disputes clause of the following type:

"* * * Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the head of the department and the decision of the head of the department or his duly authorized representatives for the hearings of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary capricious, or so grossly erroneous as necessarily to imply bad faith [or not supported by substantial evidence], be final and conclusive * * *."

In the Department of the Interior the present authority to decide contract appeals rests with the Solicitor,[33] and the Deputy Solicitor.[34]

The ASBCA is the authorized representative of the Secretaries of the Army, Navy, and Air Force in hearing, considering and determining as fully and finally as might each of the Secretaries. When a contract requires the Secretary of a Department of the Armed Services, personally, to render a decision on the matter in dispute, the Board submits its findings and recommendations to the Secretary of the Department. There are three panels of the Board—Army, Navy, and Air Force panels. Each of these panels act in divisions which normally consist of three or more members of the panel. Hearings may be held by a division, by a designated member, or by a duly authorized examiner.[35]

The Corps of Engineers has a "Claims and Appeals Board" which functions with respect to construction and engineering cases. In the case of "military" construction the jurisdiction of the Board is intermediate. An appeal lies to the ASBCA which proceeds de novo.[36]

With respect to "civilian" contracts appeals are decided with finality by the Corps of Engineers Claims and Appeal Board. The Board is patterned after the ASBCA. It has substantially the same rules and procedures,[37] but the membership of the Board is different. The Board consists of four attorneys and one engineer member. "That was deemed desirable because the engineering and

[28] Statement by John W. Gaskins, Esq., Hearings, Note 13 supra, pp. 78, 83–84. "In the Bureau of Reclamation where the Wunderlich case arose, and where millions of dollars worth of contract work is let, there is no hearing procedure whatsoever. A contractor files his claim in the ordinary form of a letter. He may if he wishes discuss the matter with an attorney in the Solicitor's Office of the Department of the Interior. There is no procedure for questioning any witnesses or for sifting conflicting views. Later a unilateral decision is rendered which is final." See also Hearings before Subcommittee of the Senate Committee on the Judiciary on S. 2487, 82d Cong., 2d Sess., pp. 93–95. Schulz, supra note 14, at 229.

[29] Program Conference Washington: U.S. Bureau of Reclamation, 1947.

[30] Record in the matter of a hearing on *Appeal of Knisely-Moore Co.*, Department of the Interior (CA-183), p. 2.

[31] See Appendix II.

[32] *Scope of Review, Government Contracts*, 66 Harv. L. Rev. 154 (November 1952).

[33] 17 Fed. Reg. 6793 (July 24, 1952).

[34] 19 Fed. Reg. 2706 (May 11, 1954).

[35] Preface to Rules of ASBCA, CCH #10,721.

[36] In the language of contracting officers the contractor "gets a second bite at the apple." However, the time-consuming, expensive and inconclusive nature of such "intermediate" appeal boards is considered an intolerable burden by many contractors. This is particularly true of many construction contracts where the claims are numerous, the testimony expert and technical, the cost of preparation and presentation at hearing substantial, and the over-all time involved comparable to that required to present the case in the Court of Claims or a United States District Court.

[37] Rules of the Corps of Engineers Claims and Appeals Board, 19 Fed. Reg. 752, (February 9, 1954).

Case 1:02-cv-00173-PMA Document 55-2 Filed 01/05/2005 Page 6 of 12

construction cases present such technical problems, that it was always felt that an engineer member of the Board would be valuable to the efforts of the Board to resolve the issues of fact that are before it." [38] This seems to be a particularly desirable feature in deciding appeals on construction contracts. A much criticized feature of the Army Engineer construction contract appeal procedure is the circumstance that appellants are furnished Findings of Fact of the contracting officer only after the contractor has filed an appeal.[39]

The General Services Administration Board of Review, regarding contracts appeals,[40] does not render decisions, but submits its recommendations based on its findings, and hearings, where appropriate, to the Administrator of General Services, who makes the decision after consideration of such recommendations. The Board consists of a chairman and such members as may be designated by the Administrator, presently three members.[41]

The Atomic Energy Commission has an Advisory Board of Contract Appeals which assists the General Manager in the discharge of his responsibility of conduct of hearing on the appeal. It recommends to him appropriate disposition of the appeal.[42] In this connection it is noted, that the members of this Board are on a "when actually employed basis" while generally the members of other boards are appointed pursuant to Civil Service Commission regulations.

The Board of Review for Contract Appeals in the Department of Agriculture consists of five members who "consider and review the matters presented to it and during the course of such review, gather evidence and conduct such informal hearings as the Board deems necessary" and then make a report with appropriate recommendations to the Secretary of Agriculture as to the proper decision in the matter.[43]

Based on a consideration and evaluation of the rules and procedures of these agencies, the following is suggested:

(1) There will be established by the Secretary of the Interior in the Office of the Solicitor a "Board of Claims and Contract Appeals" with delegated authority to act fully as "the authorized representative" of the Secretary in hearing, considering, and finally determining claims and contract appeals.

(2) Such Board shall consist of three members designated in each matter by the Solicitor. At least two members shall be attorneys. The third member in appeals on construction contracts, shall be an engineer, in appeals on supply contracts a procurement officer. All Board members shall be employees of the Department of the Interior. None shall have been directly involved in the letting or administration of the contract in dispute.[44]

*c. Purpose of the rules*

The disputes machinery is essential from the Government's point of view for getting its contracting work done efficiently, inexpensively, and expeditiously. From both the Government's and the contractor's point of view rules should provide a relatively speedy and inexpensive method of equitably resolving the numerous technical and factual disputes which almost inevitably arise in the performance of contracts of considerable magnitude.[45] Lastly, "Confidence in the fairness and integrity of adjudication and judicial proceedings is the cornerstone on which our Government rests." [46]

*d. Findings of fact and decision of contracting officer*

Solicitor Davis recently stated with respect to the "Statement of Facts" in briefs in court cases: [47]

---

[38] Statement by Mr. Seltzer, Hearings before the Subcommittee of the Senate Committee on the Judiciary on S. 2487, 82d Cong., 2d Sess. (1952), p. 101 et seq.

[39] Rule 1, 19 Fed. Reg. 753. The procedures of the Bureau of Reclamation seem to be preferable. See discussion under the heading "Findings of Fact" infra. The Corps of Engineers treats Findings of Fact regarding supply contracts differently as such Findings are served simultaneously with the decision of the contracting officer on the contractor.

[40] The Board has additional functions not connected with contract appeals. Rule 3 (Functions), CCH #10.751.

[41] Board of Review Appeal Procedure CCH #10.751.

[42] Rules of Procedure of U.S. Atomic Energy Commission Advisory Board of Contract Appeals, CCH #10,761.

[43] Establishment of the Board of Review for Contract Appeals, 18 Fed. Reg. 1481 (March 14, 1953).

[44] Based on similar rule of Department of Agriculture Board of Review for Contract Appeals, 18 Fed. Reg. 1481 (March 14, 1953).

[45] Statement by Deputy Attorney General Rogers, Hearings supra note 13, p. 138.

[46] Address by Clarence A. Davis, *Proceedings of the Administrative Law Section*, 21 D.C.B.A.J. 171–173 (April 1954)

[47] Davis, *A case on appeal—The Advocate's point of view*, 33 Nebraska Law Review 538, 541 (May 1954).

"It has been said that the power to collect and summarize facts in a clear and logical manner is the greatest attribute of the lawyer. The facts should be reduced to narrative form. They should be made readable; they should be related, so nearly as possible in consecutive order of their occurrence, and there is certainly no rule against making the statement of facts interesting."

It seems that similar common sense rules should be followed in writing Findings of Fact by contracting officers.

With respect to Findings of Fact, the Bureau of Reclamation method of writing them seems to come closest to fulfill the postulates stated above.

Colonel O. R. Maguire makes the following observations: [48]

"The contracting officer should always deliver to the contractor a copy of the written findings of fact. The procedure of the Bureau of Reclamation, Interior Department, in this respect is good both as to the form of the findings of facts and as to the procedure in furnishing copies to the contractor with notice as to the proper party with whom an appeal may be filed if the contractor is dissatisfied with such findings of facts. The contractor is in no position to appeal without having a copy of the findings of fact and the contractor is entitled as a matter of right to his appeal as provided in the contract."

There is no justification for employing different procedures with respect to construction and with respect to supply contracts.

Public Law 356 does not create any new right regarding the finality of findings of fact and decisions not appealed. Under the terms of the standard disputes clause the decision of the contracting officer is final unless the contractor appeals within the 30-day period. Unless the contractor pursues this "administrative remedy", he loses his right to sue in the court.[49]

Questions have arisen concerning Findings of Fact which are only appealed in part. The better view seems to be that the unappealed part of such findings becomes "final and conclusive", and that contractors are entitled to payment, or other relief, as the situation may be, regarding the unappealed part. A study of this problem should be undertaken as the refusal to pay would, in all likelihood, make the Government subject to liability for breach of contract.[50]

e. *Answers, appeal files, trial briefs.*

A major difficulty encountered in the past operations in the Interior Department concerned the establishment of sufficient and adequate records. It is suggested to adopt the following procedures, substantially following "Rule 4" of the ASBCA. This rule is presently under revision by a committee of the American Bar Association[51] in cooperation with the ASBCA.

### I. ANSWERS

Within 30 days after appeal, Government counsel shall prepare and file with the Board an answer thereto. The answer shall set forth in short and plain terms the Government's defenses to each claim asserted and shall admit or deny the statements upon which the contractor relies. Affirmative defenses shall be stated separately in the same answer. Defenses which go to the jurisdiction of the Board shall be raised. An original and two copies shall be filed with the Board. Upon receipt a copy shall be furnished to the contractor or his attorney.

### II. APPEAL FILE

When the Board has received the appeal, and no request for a hearing on the merits has been filed, the Board will promptly advise the contractor and the contracting officer. Within thirty (30) days thereafter the contracting officer shall compile and transmit to the Board, through the chief legal officer assigned to the bureau or agency involved in the dispute, copies of all documents pertinent to the appeal, including the following:

(1) The findings of fact and decision from which the appeal is taken.

(2) The contract, specifications, pertinent plans, amendments, and change orders.

(3) Correspondence between the parties and other data material to the appeal.

---

[48] *Manual of Procedure under Government Contracts*, 4th ed., p. 38.

[49] U.S. v. Holpuch Co., 328 U.S. 234 (1946); see Silas Mason Company v. U.S., 90 Ct. Cl. 266 (1940) for a collection of cases so holding; H.R. Report No. 1380, supra note 7, p. 6.

[50] For a discussion of this problem see Braucher, *Arbitration under Government Contracts*, 17 Law and Contemporary Problems 473 (Summer 1952) at page 499.

[51] Committee on Public Contracts, Section of Administrative Law, chairman Robert S. Moss, Esq.

(4) Transcript or record of any conference held prior to the filing of the appeal.

(5) Such additional information as the contracting officer may consider material, or as may be required by the Board.

(6) This file shall not contain information of a classified or privileged nature. Material documents of a classified or privileged nature may be forwarded separately to the Trial Attorney for the Government.[52]

### III. INSPECTION

Such appeal file shall be available for inspection by the appellant at the offices of the Board. Prior arrangements for inspection of the file should be made with the Board.

Such procedure is responsive to the following observations of the House Committee on the Judiciary:[53]

"It has been brought to light in public hearings that it is the exception rather than the rule that contractors in the presentation of their disputes are afforded an opportunity to become acquainted with the evidence in support of the Government's position."

### IV. MEMORANDUM OF LEGAL AND FACTUAL ISSUES

Counsel for the Government shall thereafter file with the Board a memorandum stating the factual and legal issues which he considers may be involved in the appeal. A copy of the memorandum shall be forwarded by counsel for the Government to the contractor,[54] who shall have 30 days, or such longer time as the Board may allow, in which to submit a reply memorandum.

It was the occasional practice in the Interior Department when appeals are taken by individuals from decisions of the heads of bureaus or agencies, to submit along with the appellate record extensive ex parte memoranda arguing in support of the position taken. The furnishing of memoranda and briefs to the appellant remedies "this appearance of evil."[55]

### V. PRE-HEARING CONFERENCE

Whenever a hearing on the merits is to be held, the Board may on its own motion, or on the motion of one of the parties, direct the parties to appear at a specified time and place for a conference to consider:

(a) the simplification of the issues;

(b) the necessity of amendments to the pleadings;

(c) the possibility of obtaining stipulations, admissions of facts and documents;

(d) the limitation of the number of expert witnesses;

(e) such other matters as may aid in the disposition of the proceedings.[56]

The utilization of the equivalent of the "pre-trial" conference is not a new instrument in administrative proceedings, but heretofore has been characterized by ineffectiveness or non-user. The effective utilization of this procedure[57] would result not only in simplification, clarification and possible disposition of many of the issues, but would undoubtedly result in the shortening of the record. Frank and informal discussion many times dissipates a reticence and reluctance to agree. Such conference should be held only after thorough preparation of all concerned.[58]

#### *f. Status of Government counsel*

The President's Conference on Administrative Procedure[59] comes to the conclusion that in view of the obvious lack of understanding of the status and au-

---

[52] On questions of privileged communications see 43 C.F.R. 2.

[53] See supra note 7, p. 5.

[54] Davis, supra note 46, p. 171.

[55] "Although the precise extent to which * * * ex parte reports, which are not made part of the record at the hearing, are utilized in the process of decision varies from individual to individual, it is nevertheless clear that at least some officials rely, in arriving at findings of fact, upon either the data or the opinions set forth in the reports, and that others, while reading the reports may be influenced, if only imperceptibly, by the statements of the investigations in the reports." Senate Document No. 8, *Administrative Procedure in Government Agencies*, 77th Cong., 1st sess., p. 163.

[56] See supra note 4.

[57] See supra note 4, pp. 10, 11, 26, 27; J. D. Bond, *The use of pre-trial technique in administrative hearings*, 21 D.C.B.A.J. 410 (September 1952); Ned Peterson, *Progress in administrative pre-trial*, The Young Lawyer (D.C.), April 1954.

[58] Ibid, p. 26.

[59] Ibid, p. 24.

thority of Government Counsel, his position should be clarified. Rules should be developed taking into consideration the following problems:

(I) Definition of the authority of Government Counsel to participate in the proceedings;

(II) Definition of the extent to which Government Counsel may or should take an advocate position or should confine himself to a development of relevant materials;

(III) Definition of the authority of Government Counsel to stipulate as to facts and testimony.[60]

Government Counsel is, of course, subject to the Canons of Legal and Professional Ethics.[61] This circumstance should act as a deterrent to certain practices which have crept into administrative procedures including appeal procedures.

*g. Representation of contractor-appellant*

An appellant may appear before the board only in person, if a corporation by an officer thereof, if a partnership or joint venture by a member thereof, otherwise only by an attorney of law duly licensed in the state of his residence or in the District of Columbia.

The appeal process "is not medicine, science, commerce, or an artistic pursuit; it is law, * * * LAW in solid capitals." [62] Contract appeal procedures are different and distinct from mere informal, technical or clerical dealings with administrative agencies. Representation of appellants, in absence of personal appearance, should be only by attorneys-at-law.

*h. Hearings*

Hearings will be held by the Board in Washington, D.C. Hearings will not ordinarily be held elsewhere unless compelling and special circumstances require a hearing at another place.

*i. Transcript*

Provision should be made for an adequate record of the hearings. "It shall be discretionary with the Board as to whether a summary record or verbatim reporting and transcription of the testimony will serve that purpose in any given case.

The ASBCA and the Corps of Engineers procedures require complete transcripts. But the values of a verbatim record are had only at a price.[63] The procedure suggested above follows the rules of the Department of Agriculture and seems to provide the most economical method employed.[64]

*j. Decisions*

Decisions of the Board will be made in writing. Authenticated copies will be forwarded simultaneously to both parties. All decisions of the Board shall be available to public inspection at the seat of the Board at Washington, D.C.

As decisions establish a rule of conduct in contract administration, widest distribution should be made within the Interior Department. All decisions should be printed or mimeographed. Presently not enough copies of appeal decisions are furnished to the agency involved in the dispute.[65] Also agencies not involved in the dispute frequently desire copies of the decision, therefore additional copying is necessary, hence the present system uneconomical.

Some decisions are presently published in the "Decisions of the Department of the Interior" (I.D.). A few selected decisions are published digested in the "Annual Report of the Secretary of the Interior." It is suggested that the Commerce Clearing House be approached to include Interior "landmark" cases in their CCH Government Contract service. This publication prints decisions of the ASBCA.[66]

---

[60] Ibid, p. 9.

[61] American Bar Association Professional Canon 3, Judicial Canon 17, prevents private communications and ex parte interviews. "It is common knowledge today that private interviews in administrative litigation have been the rule rather than the exception, even by counsel who would not dare to address a similar communication to a judge of the Courts vested with judicial power." Trowbridge vom Baur, *Whether * * * Canons of Professional and Judicial Ethics * * * should be applicable to lawyer practitioners and agency members*, 21 D.C.B.A.J. 99 (March 1954).

[62] Ibid, p. 99.

[63] Louisell, Pirrig, *The significance of verbatim recording of proceedings in American litigation*, 38 Minnesota Law Review 29 (December 1953).

[64] See supra note 43.

[65] Copies are needed by a number of administrative organs, among them contracting officers, certifying officers, and must be furnished to the General Accounting Office.

[66] Appendix IV.

#### 4. PROHIBITION OF MAKING DECISION ON A QUESTION OF LAW FINAL

Public Law 356 provides that "No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board." No difficulty is expected in the Interior Department in connection with disputes clauses in the standard forms as no deviation from the disputes clause has been authorized by the Secretary of the Interior.[67] However, P.L. 356 bans also the insertion of such a clause in any specifications, drawings, plans, or any other document which might be incorporated by reference into the contract itself.[68]

A study of such practices in the various agencies of the Department of the Interior seems necessary. The experience of the Bureau of Reclamation may be utilized in this respect. The Bureau, in cooperation with a Task Unit of the Associated General Contractors, has been engaged for several years in the successful venture of improving construction specifications. One of the improvements was the elimination of the "as determined by the contracting officer" clause respecting the interpretation of contracts.[69]

Decisions as to questions of law have no finality or conclusiveness under P.L 356. Therefore, it would not be necessary for a contractor to take an appeal from a decision on a question of law, if the contracting officer presumed to make such a decision. There is, however, the difficulty to determine whether the dispute is factual or legal. The following parody seems to express this well: [70]

> Fact is fact and law is law, and never the twain shall meet;
> Yet which is which and what is what, excapes e'en law's elite

In view of the lack of a clear-cut [71] line between questions of law and questions of fact in most cases, contractors are bound in self-protection to appeal practically every dispute. Thus a considerable burden is added to contract administration. In the Appendix [72] several cases are cited in which courts have attempted to draw a distinction between matters of fact and law. A study of this problem is suggested leading towards an elimination of unnecessary appeals in border-line cases. This may result in savings both for contractors and the Government.

The standard "disputes clause" limits the jurisdiction on appeal to "disputed questions of fact." However, practically in every case it is also necessary to apply legal principles and consequently decide questions of law. In this respect, the approach of the ASBCA rules seems to be permissible even under P.L. 356. The rules of the ASBCA provide: [73]

"When an appeal is taken pursuant to a disputes clause in a contract which limits appeals to disputes concerning questions of fact, the Board may nevertheless in its discretion hear, consider, and decide all questions of law necessary for the complete adjudication of the issue. Unless the contract provides otherwise, when in the consideration of an appeal it appears that a claim for unliquidated damages is involved therein, the Board shall, insofar as the evidence permits, make findings of fact with respect to such claims without opinion on questions of liability."

The adoption of a similar rule is suggested.

#### 5. ATTORNEY'S AND PRACTICE MANUALS

It is recommended that the Solicitor's office should maintain an adequate and detailed attorney's manual for the guidance of Government counsel. It is also recommended that the Interior Department publish for the use of appellants and their attorneys the rules, detailing the procedural steps involved in all types of proceedings, together with customary forms [74] such as the notice of appeals. It

---

[67] General Regulation No. 13 of the General Services Administration (March 19, 1953) authorizes the Secretary of the Interior to "use inconsistent terms, conditions and provisions" in standard construction forms after full consideration of the interest of uniformity. No such deviation has been authorized. Parenthetically it may be noted, that under this authority the head of any department could eliminate the entire disputes clause. Note the remark of Mr. Niederlehner that "the Government must consider whether it is justified in continuing the expense of a comprehensive administrative review system" in view of the trend towards weakening finality and conclusiveness. Hearings, supra note 13, p. 54.

[68] House Report No. 1380, supra note 7, p. 4. For testimony on this point see Hearings, supra note 13, pp. 60 and 80.

[69] Hyman Berger, *Significant changes in USBR Specs.*, Western Construction, September 1950, p. 65; Grant Bloodgood, *Cooperation—The Keynote of Reclamation Contract Construction*, The Constructor, July 1953, p. 50.

[70] Cuneo, supra note 25, at p. 377.

[71] Wigmore, Evidence, Vol. I. p. 3 (1940).

[72] Appendix III.

[73] CCH 4731.

[74] Forms should be as brief and as uncomplicated as possible.

is also suggested that supplemental clauses to the standard forms or provisions in the specifications should give full notice to bidders and contractor as to the type of appeal authority they will encounter when making appeals.

The comments of the President's Conference on Administrative Procedure [75] clearly support these recommendations:

"It was felt that a case thoroughly prepared and in which a course of procedure was clearly charged in advance of trial would of necessity result in a better record and thereby reduce delay, expense and volume of record."

### 6. IN-SERVICE-TRAINING

The application of certain criteria of the Administrative Procedure Act of 1946 introduces new and untried terminology, techniques, and procedures in the field of contract appeals. It will necessitate a certain "reorientation" not only on the part of the general public but also on the part of Government attorneys, contracting officers, contract administrators, and other administrative personnel. With respect to Government personnel, "In-Service-Training" is recommended. The experience gained by the Interior Department in the conduct of an "In-Service-Training-Program-for-Government-Attorneys" in cooperation with 21 other U.S. Government agencies and the Brookings Institution without any expense to the Government could be utilized for a similar venture including administrative personnel.[76]

(Signed) PAUL H. GANTT.

## APPENDIX I

### SELECTED CASES IN WHICH THE COURT OF CLAIMS CONSIDERED THE PRESENCE OR ABSENCE OF SUBSTANTIAL EVIDENCE

Mitchell Canneries v. U.S., 111 Ct. Cl. 228, 247, 249 (1948).

Loftis v. U.S., 110 Ct. Cl. 551, 630 (1948) "supported by the impartial and uncontradicted testimony of experienced and qualified witnesses."

De Armas v. U.S., 108 Ct. Cl. 436 (1947).

Ericson Co. v. U.S., 104 Ct. Cl. 397 (1945) "unawareness of the problem on the part of the deciding officer."

Bein v. U.S., 101 Ct. Cl. 144, 165-170 (1943) "based on substantial evidence."

Needless v. U.S., 101 Ct. Cl. 535, 600-607 (1944).

Langevin v. U.S., 100 Ct. Cl. 15 (1943).

Ruff v. U.S., 96 Ct. Cl. 148, 165 (1942) "lacking any substantial support in the evidence."

Baruch Corp. v. U.S., 92 Ct. Cl. 571 (1941).

Nelson Construction Co. v. U.S. 87 Ct. Cl. 375 (1933) "grossly erroneous and arbitrary."

Ambursen Dam Co. v. U.S. 86 Ct. Cl. 478, 523 (1938) "grossly erroneous."

## APPENDIX II

### GOVERNMENT CONTRACT APPEAL AUTHORITIES

| Department or agency: | *Reference* |
|---|---|
| Atomic Energy Commission Advisory Board of Contract Appeals. | CCH No. 10,761. |
| Department of Agriculture Board of Review for Contract Appeals. | 18 Fed. Reg. 1481 (Mar. 14, 1953). |
| Commodity Credit Corporation Contract Disputes Board. | CCH No. 10,771. |
| Department of Defense: | |
| Armed Services Board of Contract Appeals | CCH No. 10,721. |
| Corps of Engineers Claims and Appeals Board. | 19 Fed. Reg. 752 (1954). |
| General Services Administration Board of Review. | CCH No. 10,751. |
| Housing and Home Finance Agency (PHA), Assistant Commissioner for Development. | 17 Fed. Reg. 4993 (June 3, 1952). |
| Department of the Interior, Solicitor or Deputy Solicitor. | 17 Fed. Reg. 6793 (July 24, 1952). 19 Fed. Reg. 2706 (May 11, 1954). |

[75] Supra note 4, pp. 13 and 34.

[76] *In-Service-Training of lawyers is promoted. Interior takes lead to start Government program*, Inside Interior, April 1945; In *Service-Training for Government lawyers*, Federal Bar News, September 1945.

## Questionnaire Analysis

There were 46 replies to the questionnaire. The answer summaries follow each question.

I. The following questions are directed at individual cases you may have had during the past 3 years.

A. With respect to your [clients in] government contract cases, do you represent or are you yourself:

| | |
|---|---|
| Both prime and subcontractor | 10 |
| Prime contractor | 31 |
| Subcontractor | 5 |
| Large business enterprise | 39 |
| Small business | 7 |

B. Before which boards of contract appeal have you had cases during the past 3 years and how many cases have you had before each board?

| | |
|---|---|
| ASBCA | 123 |
| GSA | 38 |
| Commerce | 22 |
| Corps of Engineers | 14 |
| Interior Dept | 4 |
| NASA | 4 |
| AEC | 3 |
| FAA | 2 |
| District of Columbia | 2 |
| Maritime | 2 |
| VA | 2 |
| Total | 216 |

C. With respect to each board case, please comment on the following:

1. The period of time that elapsed between the filing of your appeal with the contracting officer and docketing of the case by the board.

| | |
|---|---|
| 1 month or less | 134 |
| More than 1 month, less than 2 months | 7 |
| More than 2 months, less than 1 year | 18 |
| Reasonable lapse of time | 36 |
| Unreasonable lapse of time | 2 |
| Settled prior to hearing | 12 |
| 1 year or more | --- |
| Total | 209 |

2. The time that elapsed between docketing and the final decision of the board.

| | |
|---|---|
| Pending cases | 15 |
| Settled prior to hearing | 8 |
| Less than 1 year | 14 |
| More than 1 year, less than 2½ years | 117 |
| Reasonable lapse of time | 35 |
| Unreasonable lapse of time | 2 |
| Total | 191 |